## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____

In re:

BONANZA CREEK ENERGY, INC., *et al.*,[1]

Debtors.

_____

)
)
)
)
)
)
)
)
)

Chapter 11

Case No. 17-_____ (___)

Joint Administration Requested

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING (I) THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES,
EMPLOYEE BENEFITS AND OTHER COMPENSATION AND (B) MAINTAIN
EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE
OBLIGATIONS, (II) CURRENT AND FORMER EMPLOYEES TO PROCEED WITH
OUTSTANDING WORKERS' COMPENSATION CLAIMS AND (III) FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Bonanza Creek Energy, Inc. and its subsidiaries that are debtors and debtors in

possession in these cases (collectively, the "**Debtors**") hereby file this *Motion of Debtors for

Entry of Interim and Final Orders Authorizing (i) the Debtors to (a) Pay Prepetition Wages*,

*Salaries*, *Employee Benefits and Other Compensation and (b) Maintain Employee Benefits

Programs and Pay Related Administrative Obligations*, *(ii) Current and Former Employees to

Proceed with Outstanding Workers' Compensation Claims and (iii) Financial Institutions to

Honor and Process Related Checks and Transfers* (this "**Motion**") pursuant to which they seek

entry of interim and final orders of the Court granting them the authority to pay certain amounts

owing related to wages, programs and other obligations to employees and former employees and

to continue certain employee programs, and authorizing financial institutions to process related

---

[1] The Debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are:  Bonanza Creek Energy, Inc. (0631), Bonanza Creek Energy Operating Company, LLC (0537), Bonanza Creek Energy Resources, LLC (6378), Holmes Eastern Company, LLC (5456), Rocky Mountain Infrastructure, LLC (6659), Bonanza Creek Energy Upstream LLC (6378) and Bonanza Creek Energy Midstream, LLC (6378).  The Debtors' mailing address is 410 17th Street, Suite 1400, Denver, Colorado 80202.

checks or electronic transfers.  This Motion is supported by the *Declaration of Scott Fenoglio in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "**Fenoglio Declaration**") filed contemporaneously herewith and by the entire record of these chapter 11 cases.  In further support of this Motion, the Debtors respectfully state as follows:

**Relief Requested**

1.      By this Motion, and pursuant to sections 105(a), 362(d), 363(b), 507(a)(4), 507(a)(5) and 541 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of interim and final orders (the "**Proposed Orders**") (a) authorizing, but not requiring, the Debtors (i) to pay or cause to be paid, in their sole discretion, all or a portion of the amounts owing (and associated costs) under or related to Wages, the Withholding Obligations, the Reimbursement Obligations, the Relocation Obligations, the Health and Welfare Plan Obligations, the Vacation and Sick Leave Obligations, the Disability Obligations, the Retirement Obligations, the Workers' Compensation Obligations, the Severance Obligations, the Supplemental Retention Obligations, the Contingent Workers Obligations, the COBRA Obligations, the Non-Insider Incentive Plan Obligations and the Allowance Program Obligations (each as individually defined below and, collectively, the "**Prepetition Employee Obligations**"), (ii) unless otherwise set forth herein, to continue, in their sole discretion, their plans, practices, programs and policies for their current and former Employees (as defined below) (collectively, the "**Employee Programs**"), as applicable, as those Employee Programs were in effect as of the Petition Date and as may be modified, terminated, amended or supplemented from time to time, by the Debtors in their sole discretion, and to make payments pursuant to the Employee Programs in the ordinary course of business, as well as to pay related administrative obligations; (b) permitting current and former Employees holding claims under

-2-

the Workers' Compensation Program (as defined below) to proceed with such claims in the appropriate judicial or administrative fora; and (c) authorizing applicable banks and other financial institutions to receive, process and pay any and all checks drawn on the Debtors' payroll and general disbursement accounts and automatic payroll and other transfers to the extent that those checks or transfers relate to any of the foregoing.[2]

2.      By seeking the authorization requested herein, it should not be presumed that the Debtors have determined, as of this time, which of the Prepetition Employee Obligations they will pay or honor, nor should any party rely on this Motion as to any specific claim or benefit. Without limitation of the foregoing, the Debtors intend to pay all Employees and, where applicable, former Employees, with respect to validly earned Prepetition Employee Obligations that the Debtors would be required to pay in the ordinary course of business.

## Jurisdiction and Venue

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.

4.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[2] The Debtors are not aware of any accrued amounts related to the Prepetition Employee Obligations that are delinquent.  The Prepetition Employee Obligations are expected to be paid in the ordinary course as they become due and payable.

5.      Venue of these cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6.      On January 4, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in these cases.

8.      Before the Petition Date, the Debtors began the solicitation of votes on the *Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Prepackaged Plan**"), through their *Disclosure Statement for Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

9.      Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the Fenoglio Declaration, which is incorporated herein by reference.

## Prepetition Employee Obligations

10.      The Debtors are an independent energy company engaged in the acquisition, exploration, development and production of onshore oil and associated liquids-rich natural gas in the United States.  The Debtors employ a talented and dedicated workforce of approximately 235 Employees who, despite exceedingly difficult market conditions, have continued to meet performance metrics and have enabled the Debtors to continue to achieve their high standards of safety, environmental compliance and productivity.  In recognition of their implementation of

innovative metering technology that has improved operational efficiency, reduced safety risks and decreased air emissions in connection with their oil-hauling operations, the Debtors were recently awarded the 2015 Operator of the Year by the Colorado Oil and Gas Conservation Commission.  Additionally, the Debtors' Employees recently achieved the milestone of two million working hours with no lost time injuries, a feat nearly unheard of in the oil and gas sector.

11.     The Debtors' workforce includes a multi-disciplinary team of experts, such as geologists, petroleum engineers and geophysicists, many of whom have decades of industry experience in horizontal drilling and fracture stimulation.  In addition to their technical staff, the Debtors also employ a diverse group of field, business and administrative professionals with extensive experience and expertise in all aspects of the oil and gas business.  The majority of the Debtors' Employees live and work in Colorado, where many of the Debtors' key oil-producing assets, including acreage in the Denver-Julesberg Basin, are located.  Continuing to properly compensate, reward and incentivize this workforce will be critical to the Debtors' efforts to reorganize and maintain their strong record of relative performance.

<u>Wages, Salaries and Other Compensation</u>

12.     As of the Petition Date, the Debtors employ approximately 235 people in active status working in both full- and part-time positions, including executives, engineers, geologists, construction professionals, field supervisors and technicians, plant technicians and foremen, business managers and analysts, environmental specialists, information technology specialists, administrative support staff and other personnel (together with current members of the Debtors'

Boards of Directors or similar governing bodies, "**Employees**").[3]  None of the Debtors' current Employees are represented by a union.

13.     The Debtors' Employees are generally paid bi-weekly, on Fridays.  Payroll is funded by the Debtors to ADP, the Debtors' payroll administrator, on the Tuesday immediately prior to the Friday when Employees are paid.  The Debtors' average gross payroll per payroll period is approximately $1,200,000.  The Debtors estimate that, as of the Petition Date, they owe approximately $450,000 in wages and salaries to Employees ("**Wages**").[4]

14.     The Debtors believe that, as of the Petition Date, no Employee is owed Wages in excess of the $12,850 cap under section 507(a)(4) of the Bankruptcy Code.

Withholding Obligations

15.     The Debtors routinely withhold from Employees' Wages certain amounts that the Debtors are required to transmit to third parties for such purposes as Social Security, Medicare, federal, state and city (e.g., Denver, Colorado) income taxes, the Health and Welfare Plans, the Retirement Plans, contributions and payroll deduction payment programs for various insurance programs and other similar mandatory withholdings (collectively, the "**Withholding Obligations**").  The Debtors believe that the Withholding Obligations, to the extent that they were in the Debtors' possession as of the Petition Date and/or remain in the Debtors' possession, are not property of the Debtors' bankruptcy estates under section 541 of the Bankruptcy Code.

---

[3] Three of the Debtors' Employees are on medical short-term disability leave.  The benefits to which Employees are entitled while on leave may vary based on type of leave (e.g., military, personal or medical). Generally, however, Employees on leave are entitled to continue receiving all employee benefits except accrued vacation time.  In this instance, while these three Employees are not receiving a salary or accruing vacation time, they are receiving 80% of their salary in the form of short-term disability benefits (in lieu of wages) and continue to receive all other benefits to which they would be entitled if they were not on leave.

[4] Employees are paid one week in arrears. The Debtors estimate that about one week of payroll will be owing as of the Petition Date.

## Business Expense Reimbursement

16.     The Debtors customarily reimburse Employees who incur business expenses in the ordinary course of performing their business duties on behalf of the Debtors.  These reimbursement obligations include travel (e.g., airfare, car rental, gas, cab, business parking and mileage), business meals and entertainment, office expenses and field expenses (e.g., tires, gas mileage, miscellaneous truck supplies, rags) (collectively, the "**Reimbursement Obligations**").

17.     Reimbursement is made directly to the Employee for business expenses paid by such Employee.  In 2016, the Reimbursement Obligations averaged approximately $35,000 per month, based on aggregate annual Reimbursement Obligations of approximately $400,000. Although it is difficult for the Debtors to determine the exact amount of the Reimbursement Obligations outstanding at any particular time because of the generally unpredictable and irregular nature of Employees seeking payment pursuant to the Reimbursement Obligations, the Debtors estimate that they owe approximately $10,000 related to Reimbursement Obligations as of the Petition Date.

## Relocation Benefits

18.     In the ordinary course of business, the Debtors pay or reimburse Employees for relocation expenses incurred at the Debtors' request or for the Debtors' benefit pursuant to an established written policy (collectively, the "**Relocation Obligations**").  The Relocation Obligations generally include amounts incurred for property rental assistance, temporary lodging and housing, moving expenses, travel expenses for housing services and visits, storage, lease termination and sales and marketing assistance.  As of the Petition Date, the Debtors believe that no Relocation Obligations remain outstanding.

Health and Welfare Benefits

19.     The Debtors offer several health and welfare benefit plans (collectively, the

"**Health and Welfare Plans**") for Employees (and in some cases former Employees), including

coverage for medical, dental, vision, flexible spending accounts, health savings accounts, basic

and voluntary supplemental life, basic and voluntary supplemental accidental death and

dismemberment, short-term and long-term disability and certain other insurance, employee

assistance and benefit programs (collectively, the "**Health and Welfare Plan Obligations**").

20.     The Debtors' medical plans (collectively, the "**Medical Plans**") require the

Debtors to pay for costs arising under such plans, including claim payments and associated

administrative costs.  Claims in respect of the Medical Plans are funded on a periodic basis

pursuant to weekly invoices received from providers, have averaged approximately $200,000 per

month in 2016 for current Employees and are net of any individual stop-loss claims.  The

Medical Plans are insured by and administered through Cigna.

21.     In connection with the Medical Plans, the Debtors purchased stop-loss insurance

(the "**Stop-Loss Coverage**") that provides additional protection against catastrophic claim

accumulation above predetermined individual and aggregate thresholds.  The Debtors pay

approximately $680,000 per year to the plan administrator in premiums for the Stop-Loss

Coverage.

22.     In 2016, the Debtors' incurred expenses of approximately (a) $2,900,000 for

payments under the Medical Plans, (b) $420,000 for contributions to health savings accounts, (c)

$300,000 for payments under the dental and vision plans and (d) $150,000 for payments under

the life and accidental death and dismemberment insurance plans.

23.     The Debtors also incurred approximately $1,500 of expenses in 2016 in

connection with a third-party administrator's management, reporting and processing of certain

obligations to former Employees under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("**COBRA**").  All Employees have the right under COBRA to elect to receive COBRA coverage, which extends medical, dental and vision benefits to which an Employee was entitled immediately prior to termination for a specified post-termination period of 18 months (collectively, the "**COBRA Obligations**").  Employees who elect to receive COBRA coverage are required to pay 102% of the elected premiums.  As of the Petition Date, approximately 15 former Employees have elected to receive COBRA coverage.  COBRA coverage is administered through Rocky Mountain Reserve.

24.     All other Health and Welfare Plans are insured by and administered through third-party insurance providers, including (a) Cigna (Stop-Loss Coverage, life, accidental death and dismemberment, short-term and long-term disability), (b) Delta Dental of Colorado (dental), (c) VSP (vision), (d) All Valley Administrators (flexible spending accounts) and (e) AFLAC (voluntary supplemental insurance, employee assistance and benefit programs).

25.     Because of the manner in which expenses are incurred and claims are processed under the Health and Welfare Plans, it is difficult for the Debtors to determine the extent of their obligations under the Health and Welfare Plans outstanding at any particular time.  Based on historical experience and expected future trends, the Debtors estimate that the cost of the Health and Welfare Plan Obligations (including payments to administrators) is approximately $320,000 per month.

### Vacation Policy, Sick Leave and Personal Time Off

26.     Pursuant to the Debtors' vacation policies, eligible Employees are paid their regularly scheduled full-time or part-time Wages for each vacation day, up to the maximum number of days accrued.  In accordance with the applicable policy, each Employee may accrue vacation days, at differing rates based on the number of years of such Employee's directly

related professional industry experience, from a minimum of three weeks (120 hours) to a maximum of six weeks (240 hours) per calendar year. Employees are permitted to carry over up to 40 hours of accrued and unused vacation time into the next calendar year, provided that such carry-over vacation is scheduled and taken by March 31 of the new calendar year. Unused vacation balances in excess of 40 hours are automatically forfeited at the end of each calendar year.

27.     The Debtors' Employees also have paid time off for a set list of ten holidays and one personal day. Any unused personal day is forfeited at the end of the calendar year. Upon termination of employment, all accrued and unused vacation days are paid out. The Debtors have prepetition accrued vacation, personal leave, holiday and paid time off obligations for their Employees (collectively, the "**Vacation Obligations**"), which they intend to honor in the ordinary course of business.

28.     The Debtors also provide sick leave and/or personal time off to their Employees (collectively, the "**Sick Leave Obligations**", and, together with the Vacation Obligations, the "**Vacation and Sick Leave Obligations**"). Employees may receive paid sick leave for up to ten working days. Unused sick leave days are cancelled at the end of each calendar year and are not paid out upon termination of employment. The Debtors estimate that the Vacation and Sick Leave Obligations for calendar year 2017 will total approximately $3,100,000, which amount includes approximately $300,000 in Vacation and Sick Leave Obligations that arose in 2016 and are eligible to be carried forward into 2017.

29.     The Debtors also offer disability benefits to their Employees, consisting of short-term and long-term disability benefits. In the event that an Employee becomes eligible for disability benefits, the benefits are provided for up to 12 weeks, after which period certain

-10-

eligible Employees may receive additional long-term disability benefits.  The long-term and short-term disability benefits are administered by Cigna, and the long-term disability benefits are insured through Cigna while the short-term disability benefits are paid for by the Debtors.  In 2016, the Debtors' incurred expenses of approximately $150,000 on account of the obligations related to the benefits described in this paragraph (collectively, the "**Disability Obligations**") and estimate paying approximately the same amount during calendar year 2017.

Retirement Plans

30.     The Debtors maintain a single-employer, 401(k) retirement plan managed by Fidelity (the "**401(k) Plan**").   The Debtors' obligations under the 401(k) Plan, as described below, are referred to collectively herein as the "**Retirement Obligations**."

31.     The 401(k) Plan is a qualified defined contribution savings plan.  The Debtors generally match an Employee's voluntary contributions dollar-for-dollar up to 6% of the Employee's compensation, subject to limits under the Internal Revenue Code.  As of December 30, 2016, 538 of the Debtors' current and former Employees were participating in the 401(k) Plan.  In 2016, the Debtors' 401(k) matching contributions averaged approximately $150,000 per month.  As of the Petition Date, the Debtors estimate that approximately $50,000 in 401(k) Plan matching obligations remain outstanding.

Workers' Compensation Program

32.     Under applicable law, the Debtors are required to maintain a workers' compensation insurance program to cover Employees' workers' compensation claims arising from or related to their employment with the Debtors (the "**Workers' Compensation Program**") and to satisfy the Debtors' obligations arising under or related to the Workers' Compensation Program (collectively, the "**Workers' Compensation Obligations**").

33.    For each claim under the Workers' Compensation Program, the Debtors file an injury report with a third-party administrator, Travelers Insurance Company ("**Travelers**"), who performs an independent investigation of whether the claim is eligible for coverage.  Travelers administers and pays out eligible claims and then invoices the Debtors for reimbursement. Payments on eligible claims arising out of the Debtors' Colorado operations are subject to a per-occurrence deductible of $16,000.  Payments on eligible claims arising out of the Debtors' Arkansas operations are not subject to a deductible.

34.    As of the Petition Date, the Debtors have two outstanding Workers' Compensation Obligations that they believe to be *de minimis* in amount.  Likewise, the average monthly cost of Workers' Compensation Obligations paid by the Debtors is *de minimis* given the Debtors' generally low level of workers' compensation claims.

<u>Contingent Workers</u>

35.    From time to time, the Debtors use the personal services of individuals employed by, and provided through, staffing agencies and of individuals providing personal services directly as independent contractors (collectively, the "**Contingent Workers**").  Such services are necessary to the operation of the Debtors' businesses.  The Contingent Workers include, but are not limited to, temporary office workers, administrative staff and information technology specialists.  Contract laborers, field technicians and contract maintenance workers are contracted through various master services agreements with workforce providers and are not considered Contingent Workers herein.  Payments to the Contingent Workers (collectively, the "**Contingent Workers Obligations**") vary according to the terms of the Contingent Workers' individual contracts with the Debtors or according to the terms of the Debtors' contracts with the appropriate staffing agencies.  It is difficult for the Debtors to determine total accrued and unpaid prepetition obligations to the Contingent Workers because of the generally unpredictable and

irregular nature of such obligations.  In 2016, the Debtors paid out approximately $60,000 on account of Contingent Workers Obligations and believe that total accrued and unpaid Contingent Workers Obligations as of the Petition Date do not exceed this amount.

Severance Program

36.    The Debtors have certain obligations (collectively, the "**Severance Obligations**") arising out of a change-in-control and severance plan maintained by the Debtors for the benefit of certain of their executives and key Employees (as may be amended, restated, supplemented or modified from time to time, the "**Severance Program**"), some of whom may be considered insiders of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code) (collectively, "**Insiders**").  Although the Debtors do not maintain a formal severance plan other than the Severance Program, the Debtors paid out approximately $600,000 in 2016 in connection with the termination of certain non-officer Employees (none of whom could be considered Insiders).

37.    For the avoidance of doubt, the Debtors are not seeking authority to continue the Severance Program with respect to Employees who are Insiders, but only with respect to all other Employees who are not Insiders and are eligible to receive payments pursuant to the Severance Program (collectively, the "**Eligible Non-Insider Employees**").[5]  If an Eligible Non-Insider Employee is terminated in accordance with the terms of the Severance Program, such Eligible Non-Insider Employee may be entitled to cash severance in an amount equal to a specified percentage of base salary and annual bonus (with the percentage determined based on such

---

[5] The Debtors reserve the right to seek, through another motion, approval of a severance program with respect to Insiders that is consistent with section 503(c) of the Bankruptcy Code.  Furthermore, the Debtors reserve all of their rights to contest any claim by an Eligible Non-Insider Employee to payment under the Severance Program.

Employee's job title), accelerated vesting of equity awards and reimbursement of premiums for health coverage for a specified post-termination period.

38.     The Debtors believe that having the authority, in their sole discretion, to maintain the Severance Program for Eligible Non-Insider Employees is essential to their businesses in order to retain, and provide security to, Eligible Non-Insider Employees.  Although it is difficult for the Debtors to estimate the average monthly cost of the Severance Obligations given the generally unpredictable and irregular nature of such obligations, the Debtors believe that the monthly cost of maintaining the Severance Program for Eligible Non-Insider Employees is negligible in the context of the Debtors' aggregate compensation and benefit obligations.  The Debtors are not seeking, pursuant to this Motion, authority to make any:  (a) postpetition severance payments not permitted under section 503(c) of the Bankruptcy Code or (b) severance payments outside the Severance Program to any individuals.

Supplemental Retention Program

39.     The Debtors have certain obligations (collectively, the "**Supplemental Retention Obligations**") arising out of a supplemental retention program adopted by the Debtors for the benefit of certain designated officers, directors, managers and other designated personnel (as may be amended, restated, supplemented or modified from time to time, the "**Supplemental Retention Program**"), some of whom may be considered Insiders.  For the avoidance of doubt, the Debtors are not seeking authority to continue the Supplemental Retention Program with respect to Employees who are Insiders, but only with respect to Eligible Non-Insider Employees.[6]  If an Eligible Non-Insider Employee remains employed by the Debtors until a

---

[6] The Debtors reserve the right to seek, through another motion, approval of a retention program with respect to Insiders that is consistent with section 503(c) of the Bankruptcy Code.

designated distribution date, then such Eligible Non-Insider Employee is entitled to receive a lump sum payment equal to a percentage of such Employee's base salary.

40.     The Debtors believe that having the authority, in their sole discretion, to maintain the Supplemental Retention Program for Eligible Non-Insider Employees is essential to their businesses in order to retain, and provide security to, Eligible Non-Insider Employees.  As of the Petition Date, the Debtors have no accrued and unpaid Supplemental Retention Obligations owing to Eligible Non-Insider Employees.

Non-Insider Incentive Plans

41.     The Debtors maintain incentive plans for their Employees.  The incentive plans are carefully calibrated to ensure that eligible Employees are rewarded for their efforts toward the Debtors' financial performance and productivity, as well as their contributions to the Debtors' achievement of maximum workplace safety and environmental compliance.  Pursuant to this Motion, the Debtors seek authority to continue certain of these incentive plans with respect to Employees who are not Insiders, as detailed below (collectively, the "**Non-Insider Incentive Plans**").  This Motion does not seek to continue any incentive plans with respect to Insiders, which may be addressed in a subsequent motion to be filed with the Court.[7]

42.     In the ordinary course of business, the Debtors offer awards under a Short-Term Incentive Performance Plan (the "**STIP**") to all full-time Employees for the purpose of providing Employees with a direct financial incentive in meeting certain financial goals and other departmental objectives identified by the Debtors.  Each Employee's STIP opportunity is based on his or her role and position within the Debtors' business and is connected to the achievement

---

[7] The Debtors reserve the right to seek, through another motion, approval of incentive plans with respect to Insiders that are consistent with section 503(c) of the Bankruptcy Code.

of a mix of key performance indicators (e.g., production levels, cost management and/or liquidity) at the company-wide, regional and individual employee levels.  The Debtors seek authority in this Motion to make payments under the STIP to non-Insider Employees (collectively, the "**Non-Insider STIP Obligations**") for employee performance during calendar year 2016 in the ordinary course of business.  The Debtors made an initial mid-year STIP payment and expect to make another year-end STIP payment to eligible non-officer and non-director Employees:  (a) the first payment was made on October 7, 2016, totaling approximately $1,950,000 and consisting of 50% of such Employees' annual target STIP payment at the time and (b) subject to approval by the Company's Board of Directors, the second payment, expected to be made in March 2017, is expected to total approximately $2,000,000, consisting of the amount earned based on results for the full year as reduced by the amount of the first payment. Accordingly, the Debtors believe that amounts earned under the STIP by non-Insider Employees in calendar year 2016 will total approximately $3,950,000.  Furthermore, certain minimum performance thresholds must be achieved before any compensation at all would be paid under the STIP.

43.     The Debtors also maintain, in the ordinary course of business, a Long-Term Incentive Performance Plan (the "**LTIP**").  The LTIP is available to all full-time Employees (approximately 230 non-Insider Employees as of the Petition Date), and provides for a variety of equity and cash-based incentive awards (collectively, "**Awards**") which may be granted to individual Employees at the discretion of the Company's Board of Directors, usually in connection with such individual Employee's achievement of certain performance goals set by the Company's compensation committee based on a variety of business, safety and environmental criteria.  Awards that may be granted under the LTIP include:  (a) options to purchase shares of

common stock of the Company ("**Shares**"); (b) stock appreciation rights ("**SARs**"), whereby the grantee, upon exercise, receives Shares or cash having a value equal to the excess of the fair market value of the number of Shares covered by the SARs as of the exercise date over the grant price of the SARs; (c) restricted stock units, that upon settlement entitle the grantee to one Share for each stock unit; (d) dividend equivalent rights, entitling the grantee to receive cash or stock distributions that would have been paid on the Shares specified in the dividend equivalent right had such Shares been issued to and held by the grantee; and (e) certain other awards at the discretion of the Company's Board of Directors, including (i) grants of restricted or unrestricted Shares, (ii) cash awards and (iii) any other securities with a value derived from the value of or related to Shares, or returns thereon.  In this Motion, the Debtors are not seeking to make any future Awards to any Insider Employees at this time and, instead, are seeking authority to make Awards, in their sole discretion, under the existing LTIP only to non-Insider Employees (the "**Non-Insider LTIP Obligations**").  The Debtors granted approximately 2,110,000 restricted stock units to non-Insider Employees in 2016.

44.     The Debtors also maintain a spot bonus program called "Give Me Five" (the "**Spot Bonus Program**", and the obligations arising thereunder and under other discretionary bonuses, the "**Spot Bonus Program Obligations**", and together with the Non-Insider LTIP Obligations and the Non-Insider STIP Obligations, the "**Non-Insider Incentive Plan Obligations**"), which is designed to reward non-officer Employees for performance, whether within or outside the scope of such Employees' responsibility, that improves the Debtors' businesses (e.g., captures efficiencies, achieves cost-savings or cost-avoidance).  In 2016, the Debtors paid approximately $100,000 on account of Spot Bonus Program Obligations to approximately 60 individuals and estimate paying approximately the same amount during

calendar year 2017.  As of the Petition Date, the Debtors estimate that no Spot Bonus Program

Obligations remain outstanding.

<u>Allowance Programs</u>

45.     In addition to the foregoing, the Debtors have in place various allowance

programs that are offered to Employees, including parking and commuting programs

(collectively, the "**Allowance Programs**").  The Debtors believe that failing to honor expected

benefits under the Allowance Programs (the "**Allowance Program Obligations**") would have an

adverse effect on the Debtors' businesses and estates due to the necessity of Employees

commuting to well site locations and the downtown Denver area.  The total amount of annual

payments under the Allowance Programs is approximately $400,000.

**Basis for Relief**

<u>Cause Exists to Authorize the Debtors to Pay Prepetition Employee Obligations, Maintain
Employee Programs and Pay Related Administrative Obligations</u>

46.     Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, an

individual's claims for "wages, salaries, or commissions, including vacation, severance, and sick

leave pay" earned within 180 days before the Petition Date, and claims against the Debtors for

contributions to employee benefit plans arising from services rendered within 180 days before

the Petition Date, are each afforded unsecured priority status up to $12,850 per employee.

Furthermore, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

the estate."  Section 105(a) of the Bankruptcy Code further provides, in relevant part, that "[t]he

court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of [the Bankruptcy Code]."

47.     The Debtors believe that many of their Prepetition Employee Obligations constitute priority claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  To the extent such Prepetition Employee Obligations constitute priority claims, the Debtors are required to pay such claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B).  Thus, granting the relief sought herein would only cause such Employee claims to be paid in the initial stages of these chapter 11 cases, rather than at the plan confirmation stage.

48.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Debtors' decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See, e.g.*, *In re Martin* (*Myers v. Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper* (*Fulton State Bank v. Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business purpose" test of *Lionel Corp.* and requiring good faith); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. and Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business purpose" test in the *Abbotts Dairies* decision); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

49.     The Debtors further submit that payment of the Prepetition Employee Obligations, maintaining the Employee Programs and paying related administrative expenses is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

50.     Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105 "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings"); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad"); *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.") (citations omitted); *see also In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.")

51.     The Court's power to utilize the "doctrine of necessity" in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity

more than a century ago, in *Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286 (1882), in

affirming the authorization by the lower court of the use of receivership funds to pay pre-

receivership debts owed to employees, vendors, and suppliers, among others, when such

payments were necessary to preserve the receivership property and the integrity of the business

in receivership. *See id.* at 309. The modern application of the doctrine of necessity is largely

unchanged from the Court's reasoning in *Miltenberger. See In re Lehigh & New Eng. Ry.*, 657

F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment'

rule, a real and immediate threat must exist that failure to pay will place the continued operation

of the [debtor] in serious jeopardy."); *Friedman's Inc. v. Roth Staffing Cos., L.P. (In re

Friedman's Inc.)*, Case No. 09-10161 (CSS), 2011 Bankr. LEXIS 4500, at *7-8 (Bankr. D. Del.

Nov. 30, 2011) ("[t]he 'doctrine of necessity' stands for the proposition that a bankruptcy court

may allow payment outside of a plan of reorganization on account of a pre-petition obligation

where such payment is critical to the reorganization process.") (citing *In re Enron Corp.*, 2003

WL 1562202, at *20 (Bankr. S.D.N.Y. 2003)); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D.

Del. 1999).

    52.    The doctrine of necessity "recognizes the existence of the judicial power to

authorize a debtor in a reorganization case to pay prepetition claims where such payment is

essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174,

176 (Bankr. S.D.N.Y. 1989); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999)

(stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the

doctrine of necessity should be invoked to permit payment); *In re Sharon Steel Corp.*, 159 B.R.

-21-

730, 736 (Bankr. W.D. Penn. 1993) (noting that courts grants debtors the authority to pay certain prepetition claims "where the payment is necessary to permit the effectuation of the rehabilitative purposes of the Bankruptcy Code").

53.     The doctrine of necessity is an accepted component of modern bankruptcy jurisprudence.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); *see also Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l v. Motor Coach Indus. Int'l (In re Motor Coach Indus. Int'l)*, Case No. 09-078-SLR, 2009 U.S. Dist. LEXIS 10024, at *7 n.5 (D. Del. Feb. 10, 2009); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

54.     In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport Ry.*, 106 U.S. 286 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh and N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999); *Pension Benefit Guar. Corp. v. Sharon Steep Corp. (In re Sharon Steel Corp.)*, 159 B.R. 730, 736 (Bankr. W.D. Penn. 1993); *see also In re Ionosphere Clubs*, *Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (holding that the "ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept").

55.     The Debtors submit that the requested relief represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm and is

justified under sections 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6003. This is because any delay in paying the Prepetition Employee Obligations or failure to maintain the Employee Programs and pay related administrative obligations will adversely impact the Debtors' relationships with their Employees and could irreparably impair Employees' morale, dedication, confidence and cooperation.  The Debtors' businesses hinge on their relationships with their customers, and the ability to provide superior services is vital.  The Employees' support for the Debtors' restructuring efforts in these chapter 11 cases is critical to the success of those efforts.  At this early stage, the Debtors simply cannot risk the substantial damage to their businesses that would inevitably attend any decline in their Employees' morale attributable to the Debtors' failure to pay the Prepetition Employee Obligations.

56.    Absent an order granting the relief requested in this Motion, many Employees would undoubtedly suffer hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain Employees to meet their own personal financial obligations.  Without the requested relief, the stability of the Debtors would be undermined, perhaps irreparably, by the possibility that otherwise loyal Employees will seek other employment alternatives.  Consequently, all of the Debtors' creditors will benefit if the requested relief is granted.

57.    In the overwhelming majority of large corporate chapter 11 filings, including in this district, courts have approved payment of employee prepetition claims for employee compensation and benefits similar to those described herein.  *See, e.g.*, *In re Key Energy Serv. Inc.*, Case No. 16-12306 (BLS) (Bankr. D. Del. Nov. 14, 2016) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re Basic Energy Serv., Inc.*, Case No. 16-12320 (KJC) (Bankr.

D. Del. Oct. 26, 2016) (same); *In re Triangle USA Petroleum Corp.*, Case No. 16-11566 (MFW)

(Bankr. D. Del. Aug. 1, 2016) (same); *In re Seventy Seven Fin. Inc.*, Case No. 16-11409 (LSS)

(Bankr. D. Del. June 28, 2016) (same); *In re Quicksilver Res. Inc.*, Case No. 15-10585 (LSS)

(Bankr. D. Del. Apr. 4, 2015) (same); *In re Magnum Hunter Res. Corp.*, Case No. 15-12533

(KG) (Bankr. D. Del. Mar. 10, 2016) (same); *In re New Gulf Res., LLC*, Case No. 15-12566

(BLS) (Bankr. D. Del. Jan. 15, 2016) (same); *In re Samson Res. Corp.*, Case No. 15-11934

(CSS) (Bankr. D. Del. Nov. 17, 2015) (same); *In re Energy Future Holdings Corp.*, Case No. 14-

10979 (CSS) (Bankr. D. Del. June 4, 2014) (same); *In re GSE Envtl., Inc.*, Case No. 14-11126

(MFW) (Bankr. D. Del. May 30, 2014) (same); *In re Dolan Co.*, Case No. 14-10614 (BLS)

(Bankr. D. Del. Apr. 15, 2014) (same); *In re Sorenson Commc'ns, Inc.*, Case No. 14-10454

(BLS) (Bankr. D. Del. Mar. 4, 2014) (same); *In re Longview Power, LLC*, Case No. 13-12211

(BLS) (Bankr. D. Del. Sept. 24, 2013) (same); *In re SandRidge Energy, Inc.*, Case No. 16-32488

(DRJ) (Bankr. S.D. Tex. June 30, 2016) (same); *In re Midstates Petroleum Co.*, Case No. 16-

32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (same).

<u>Cause Exists to Authorize the Debtors to Continue to Pay and/or Honor Any and All Workers'
Compensation Obligations and to Authorize Current and Former Employees to Proceed with
Outstanding Workers' Compensation Claims</u>

58.    It is imperative that the Debtors be permitted to continue to pay and/or honor any

and all Workers' Compensation Obligations, including all prepetition premiums, claims

(including claim settlements), losses and expenses in connection with the Workers'

Compensation Obligations and to pay all costs and expenses associated with the Workers'

Compensation Program, including such costs and expenses related to administration, servicing,

processing, adjusting, paying and settling claims and losses under these programs.

59.     It is crucial for Employee morale and for the Debtors' operations that the Debtors be able to continue to (a) pay workers' compensation benefits and (b) honor the Workers' Compensation Obligations under the Workers' Compensation Program described herein.

60.     Section 362(a) of the Bankruptcy Code operates to stay, among other things:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

61.     To the extent any current or former Employees hold claims pursuant to the Workers' Compensation Program, the Debtors seek authorization under section 362(d) of the Bankruptcy Code to permit such current or former Employees, in the Debtors' sole discretion, to proceed with such claims in the appropriate judicial or administrative fora. The Debtors believe cause exists to grant them authority to modify the automatic stay, where the Debtors deem it appropriate to do so, because staying such claims could have a detrimental effect on the financial and medical well-being and morale of their Employees and lead to the departure of certain Employees. Such departures could cause a severe disruption in the Debtors' businesses, to the detriment of all parties in interest. To this end, the Debtors seek an order granting (a) relief from the automatic stay as it relates to current and former Employee claims under the Workers' Compensation Program and (b) waiver of the corresponding notice requirements under Bankruptcy Rule 4001(d).

62.     Pursuant to this Motion, the Debtors do not seek a waiver, termination or modification of the automatic stay with respect to any other claims.

<u>Applicable Financial Institutions Should Be Authorized to Honor and Process Related Checks
and Transfers</u>

63.     The Debtors also request that all applicable banks and other financial institutions
be authorized to (a) receive, process, honor and pay all checks presented for payment of, and to
honor all fund transfer requests made by the Debtors related to, the claims that the Debtors
request authority to pay in this Motion, regardless of whether the checks were presented or fund
transfer requests were submitted before or after the Petition Date and (b) rely on the Debtors'
designation of any particular check as approved by the interim and final orders.

64.     As a result of the commencement of the Debtors' chapter 11 cases, and in the
absence of an order of the Court providing otherwise, the Debtors' checks, wire transfers and
direct deposit transfers for the Prepetition Employee Obligations may be dishonored or rejected
by the financial institutions.

65.     The Debtors represent that each of these checks or transfers is or will be drawn on
the Debtors' payroll and general disbursement accounts and can be readily identified as relating
directly to payment of the Prepetition Employee Obligations.  Accordingly, the Debtors believe
that prepetition checks and transfers other than those for the Prepetition Employee Obligations
will not be honored inadvertently.

66.     Authorization to pay any amounts for the Prepetition Employee Obligations shall
not be deemed to constitute a postpetition assumption, reaffirmation or adoption of any contract,
program, plan or policy pursuant to section 365 of the Bankruptcy Code.  The Debtors are in the
process of reviewing these matters and reserve all of their rights under the Bankruptcy Code or
otherwise applicable law with respect thereto.  Moreover, authorization to pay the Prepetition
Employee Obligations shall not affect the Debtors' right to contest the amount or validity of any

Prepetition Employee Obligations, including any payroll taxes that may be due to any taxing authority.

### Necessity of Immediate Relief

67.      Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."  If the Debtors are not permitted to continue their ordinary business operations by continuing to pay compensation and provide benefits to their Employees as they become due, and to reassure their Employees that authority has been granted to honor all such claims, the Debtors could suffer immediate and irreparable harm.  Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

### Debtors' Reservation of Rights

68.      Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claims related to the Prepetition Employee Obligations under applicable non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Waiver of Stay Under Bankruptcy Rule 6004(h)

69.      The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that

"[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## Notice

70.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware, (b) each of the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, (c) Bracewell LLP as counsel to KeyBank National Association, as administrative agent under that certain Credit Agreement, dated as of March 29, 2011, as amended, restated, modified and supplemented from time to time, (d) Kirkland & Ellis LLP as counsel to that certain ad hoc committee of holders of 6.75% senior notes due 2021 and 5.75% senior notes due 2023 issued by the Debtors, (e) the Securities and Exchange Commission, (f) the Internal Revenue Service, (g) the United States Attorney's Office for the District of Delaware, (h) the United States Department of the Interior and (i) the United States Department of Labor (collectively, the "**Notice Parties**").

71.     Notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). A copy of this Motion and any order approving it will also be made available on the Debtors' case information website located at *https://cases.primeclerk.com/bcei*. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

## **No Prior Request**

72.     The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter the Proposed Orders, substantially in the forms attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:    January 4, 2017
          Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Mark D. Collins*

Mark D. Collins (No. 2981)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701
collins@rlf.com
steele@rlf.com
schlauch@rlf.com

-and-

DAVIS POLK & WARDWELL LLP

Marshall S. Huebner
Brian M. Resnick
Adam L. Shpeen
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 607-7983
marshall.huebner@davispolk.com
brian.resnick@davispolk.com
adam.shpeen@davispolk.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

_____ )
In re:                                  )    Chapter 11
                                        )
BONANZA CREEK ENERGY, INC., *et al.*,[1]  )    Case No. 17-_____ (___)
                                        )
         Debtors.                       )    Joint Administration Requested
                                        )
_____ )

**INTERIM ORDER AUTHORIZING (I) THE DEBTORS TO (A) PAY PREPETITION
WAGES, SALARIES, EMPLOYEE BENEFITS AND OTHER COMPENSATION AND
(B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED
ADMINISTRATIVE OBLIGATIONS, (II) CURRENT AND FORMER EMPLOYEES TO
PROCEED WITH OUTSTANDING WORKERS' COMPENSATION CLAIMS AND
(III) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS
<u>AND TRANSFERS</u>**

Upon the motion (the "**Motion**")[2] of Bonanza Creek Energy, Inc. and its subsidiaries that

are debtors and debtors in possession in these cases (each, a "**Debtor**" and together, the

"**Debtors**") for entry of interim and final orders pursuant to sections 105(a), 362(d), 363(b),

507(a)(4), 507(a)(5) and 541 of the Bankruptcy Code and Bankruptcy Rule 6003 granting them

the authority to pay certain amounts owing related to wages, programs and other obligations to

employees and former employees and to continue certain employee programs, and authorizing

financial institutions to process related checks or electronic transfers, as more fully described in

the Motion; and this Court having jurisdiction to consider the matters raised in the Motion

---

[1] The Debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are: Bonanza Creek Energy, Inc. (0631), Bonanza Creek Energy Operating Company, LLC (0537), Bonanza Creek Energy Resources, LLC (6378), Holmes Eastern Company, LLC (5456), Rocky Mountain Infrastructure, LLC (6659), Bonanza Creek Energy Upstream LLC (6378) and Bonanza Creek Energy Midstream, LLC (6378). The Debtors' mailing address is 410 17th Street, Suite 1400, Denver, Colorado 80202.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

pursuant to 28 U.S.C. § 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012; and it having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and it having venue pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted on an interim basis as set forth herein.

2.      The Debtors are authorized, but not required, to (a) pay or cause to be paid all amounts required under or related to the Prepetition Employee Obligations in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the Petition Date and (b) continue to pay and honor their obligations arising under or related to the Employee Programs in the ordinary course of business and in accordance with the same

practices and procedures as were in effect prior to the Petition Date, as those Employee Programs were in effect as of the Petition Date and as such Employee Programs may be modified, terminated, amended or supplemented from time to time, with the reasonable consent of the Required Supporting Noteholders, in the ordinary course of the Debtors' businesses, in each case up to a maximum aggregate cap of $2,500,000.

3.      Nothing in this Order authorizes any payment subject to section 503(c) of the Bankruptcy Code.

4.      The Debtors are authorized, but not required, to (a) continue utilizing third parties for certain services as described in the Motion and to pay or cause to be paid such claims as and when such obligations are due and (b) pay prepetition amounts owing in the ordinary course of business to third parties in connection with administering and maintaining the Employee Programs.

5.      (a) The automatic stay is modified solely to the extent necessary to allow current and former Employees to proceed with claims under the Workers' Compensation Program in the appropriate judicial or administrative fora and (b) the notice requirements under Bankruptcy Rule 4001(d) with respect to (a) above are waived.

6.      The Debtors are authorized, but not required, to issue new postpetition checks, or effect new fund transfers, for the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse their Employees or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

7.      A final hearing to consider the relief requested in the Motion shall be held on

_____, 2017 at [•] (Prevailing Eastern Time) and any objections or responses to the

Motion shall be filed and served on the Notice Parties so as to be actually received on or prior to

_____, 2017 at 4:00 p.m. (Prevailing Eastern Time).

8. All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

9. Nothing in the Motion or this Order, nor any payment made pursuant to this Order, shall be deemed to be, or constitute, (a) an admission to the validity or priority of any claim against the Debtors, (b) an assumption or postpetition reaffirmation of any agreement, plan, practice, program, policy, executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, (c) a grant of third-party beneficiary status or bestowal of any additional rights on any third party or (d) a waiver of any rights, claims or defenses of the Debtors.

10. Nothing in the Motion or this Order shall impair the ability of the Debtors to contest the validity or amount of any payment made pursuant to this Order.

11. Nothing in the Motion or this Order shall be construed as impairing the Debtors' right to contest the validity or amount of any Prepetition Employee Obligation, including payroll taxes that may be due to any taxing authority.

12. The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

-4-

13.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

15.     Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

16.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.


Dated:     _____, 2017
        Wilmington, Delaware


                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | | |
| In re: | ) | Chapter 11 |
| | ) | |
| BONANZA CREEK ENERGY, INC., *et al.*,[1] | ) | Case No. 17-_____ (___) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | | |

**FINAL ORDER AUTHORIZING (I) THE DEBTORS TO (A) PAY PREPETITION
WAGES, SALARIES, EMPLOYEE BENEFITS AND OTHER COMPENSATION AND
(B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED
ADMINISTRATIVE OBLIGATIONS, (II) CURRENT AND FORMER EMPLOYEES TO
PROCEED WITH OUTSTANDING WORKERS' COMPENSATION CLAIMS AND
(III) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS
AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of Bonanza Creek Energy, Inc. and its subsidiaries that

are debtors and debtors in possession in these cases (each, a "**Debtor**" and together, the

"**Debtors**") for entry of a final order pursuant to sections 105(a), 362(d), 363(b), 507(a)(4),

507(a)(5) and 541 of the Bankruptcy Code and Bankruptcy Rule 6003 granting them the

authority to pay certain amounts owing related to wages, programs and other obligations to

employees and former employees and to continue certain employee programs, and authorizing

financial institutions to process related checks or electronic transfers, as more fully described in

the Motion; and this Court having jurisdiction to consider the matters raised in the Motion

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

[1] The Debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are:  Bonanza Creek Energy, Inc. (0631), Bonanza Creek Energy Operating Company, LLC (0537), Bonanza Creek Energy Resources, LLC (6378), Holmes Eastern Company, LLC (5456), Rocky Mountain Infrastructure, LLC (6659), Bonanza Creek Energy Upstream LLC (6378) and Bonanza Creek Energy Midstream, LLC (6378).  The Debtors' mailing address is 410 17th Street, Suite 1400, Denver, Colorado 80202.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

pursuant to 28 U.S.C. § 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012; and it having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and it having venue pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held an interim hearing on the Motion; and the Court having granted interim relief on the Motion on (D.I. [•]);[ and the Court having held a final hearing on the Motion;] and the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these cases; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      The Debtors are authorized, but not required, to pay or cause to be paid all amounts required under or related to the Prepetition Employee Obligations in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized, but not required, to continue to pay and honor their obligations arising under or related to the Employee Programs in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the Petition

Date, as those Employee Programs were in effect as of the Petition Date and as such Employee

Programs may be modified, terminated, amended or supplemented from time to time, with the

reasonable consent of the Required Supporting Noteholders, in the ordinary course of the

Debtors' businesses.

4.       The Debtors are authorized, but not required, to, in their sole discretion, (a)

continue utilizing third parties for certain services as described in the Motion and to pay or cause

to be paid such claims as and when such obligations are due and (b) pay prepetition amounts

owing in the ordinary course of business to third parties in connection with administering and

maintaining the Employee Programs.

5.       (a) The automatic stay is modified solely to the extent necessary to allow current

and former Employees to proceed with claims under the Workers' Compensation Program in the

appropriate judicial or administrative fora and (b) the notice requirements under Bankruptcy

Rule 4001(d) with respect to (a) above are waived.

6.       The Debtors are authorized, but not required, to issue new postpetition checks, or

effect new fund transfers, for the Prepetition Employee Obligations to replace any prepetition

checks or fund transfer requests that may be dishonored or rejected and to reimburse their

Employees or the applicable payee, as the case may be, for any fees or costs incurred by them in

connection with a dishonored or voided check or funds transfer.

7.       All applicable banks and other financial institutions are hereby authorized to

receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or

automated clearing house transfers evidencing amounts paid by the Debtors under this Order

whether presented prior to, on or after the Petition Date to the extent the Debtors have good

funds standing to their credit with such bank or other financial institution.  Such banks and

financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

8.       Nothing in the Motion or this Order, nor any payment made pursuant to this Order, shall be deemed to be, or constitute, (a) an admission to the validity or priority of any claim against the Debtors, (b) an assumption or postpetition reaffirmation of any agreement, plan, practice, program, policy, executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, (c) a grant of third-party beneficiary status or bestowal of any additional rights on any third party or (d) a waiver of any rights, claims or defenses of the Debtors.

9.       Nothing in the Motion or this Order shall impair the ability of the Debtors to contest the validity or amount of any payment made pursuant to this Order.

10.      Nothing in the Motion or this Order shall be construed as impairing the Debtors' right to contest the validity or amount of any Prepetition Employee Obligation, including payroll taxes that may be due to any taxing authority.

11.      The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

12.      Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.      The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

14.     Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

15.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: _____, 2017
        Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE