## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| _____ ) | | |
| In re: | ) | Chapter 11 |
| | ) | |
| BONANZA CREEK ENERGY, INC., *et al.*, | ) | Case No. 17-_____ (___) |
| | ) | |
| Debtors.[1] | ) | Joint Administration Requested |
| | ) | |
| _____ ) | | |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING (I) THE DEBTORS TO CONTINUE TO MAINTAIN EXISTING CASH MANAGEMENT SYSTEM, FUEL CARD PROGRAM, BANK ACCOUNTS AND BUSINESS FORMS AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Bonanza Creek Energy, Inc. and its subsidiaries that are debtors and debtors in possession in these cases (collectively, the "**Debtors**") hereby file this *Motion of Debtors for Entry of Interim and Final Orders Authorizing (i) the Debtors to Continue to Maintain Existing Cash Management System, Fuel Card Program, Bank Accounts and Business Forms and (ii) Financial Institutions to Honor and Process Related Checks and Transfers* (this "**Motion**") pursuant to which they seek entry of interim and final orders authorizing the Debtors to continue to use existing their existing cash management system and maintain existing bank accounts and business forms. This Motion is supported by the *Declaration of Scott Fenoglio in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "**Fenoglio Declaration**") filed contemporaneously herewith and by the entire record of these chapter 11 cases. In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are: Bonanza Creek Energy, Inc. (0631), Bonanza Creek Energy Operating Company, LLC (0537), Bonanza Creek Energy Resources, LLC (6378), Holmes Eastern Company, LLC (5456), Rocky Mountain Infrastructure, LLC (6659), Bonanza Creek Energy Upstream LLC (6378) and Bonanza Creek Energy Midstream, LLC (6378). The Debtors' mailing address is 410 17th Street, Suite 1400, Denver, Colorado 80202.

## Relief Requested

1.      By this Motion, and pursuant to sections 105(a), 345, 363(c)(1) and 364(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of interim and final orders (i) authorizing, but not directing, the Debtors, in their sole discretion, to (a) continue to operate their prepetition cash management system with respect to intercompany cash management, as further described below (the "**Cash Management System**"), (b) maintain the Fuel Card Program (as defined below), (c) maintain the Debtors' existing bank accounts (together with any accounts opened after the Petition Date, the "**Bank Accounts**" and each, a "**Bank Account**") located at certain banks and financial institutions (each, a "**Bank**" and collectively, the "**Banks**") and (d) maintain the Debtors' existing business forms and (ii) waiving the requirements of section 345(b) of the Bankruptcy Code on an interim basis.

2.      A nonexclusive list of the Bank Accounts (with account numbers partly redacted) is attached hereto as <u>Exhibit A</u>.  The Debtors believe that all of the Bank Accounts are maintained at stable financial institutions.

## Jurisdiction and Venue

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.

4.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.      Venue of these cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6.      On January 4, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in these chapter 11 cases.

8.      Before the Petition Date, the Debtors began the solicitation of votes on the *Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Prepackaged Plan**"), through their *Disclosure Statement for Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

9.      Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the Fenoglio Declaration, which is incorporated herein by reference.

## Cash Management System

10.      In the ordinary course of business, the Debtors utilize the Cash Management System to collect and disburse funds generated by the operations of the Debtors.  The Cash Management System also enables the Debtors to monitor the collection and disbursement of funds and maintain control over the administration of their Bank Accounts.  The Cash Management System is not entirely automated; the employees of the Debtors are required to monitor the system, manage the proper disbursement of funds, utilize the wire capabilities of

BBVA Compass and UMB Bank to disburse funds, and manually deposit checks using an internal remote capture tool.

11.     The Cash Management System has two main components: (a) cash collection and (b) cash disbursement.  To provide an overview of the movement of cash through the Debtors' Cash Management System, a schematic diagram illustrating the flow of funds through the Cash Management System is attached hereto as Exhibit B.

Cash Collection

12.     The Debtors generate and receive funds from a variety of sources.  The Debtors' primary source of funds is revenue from oil, gas and natural gas liquids product purchases by various midstream oil and gas companies.  In addition, the Debtors may generate receipts from their joint interest billing receivables and miscellaneous other sources.  With the exception of joint interest billing receivables, where some payments are received by check, all other receivables are received by wire.  The Debtors' receipts are deposited directly into the Debtors' operating account with BBVA Compass (the "**Operating Account**").  As of the Petition Date, the balance of cash in the Operating Account is approximately $10,000,000.

Cash Disbursements

13.     Receipts concentrated in the Operating Account are used by the Debtors to satisfy their financial obligations.  Disbursements by check are generally made through a controlled disbursement account with BBVA Compass (the "**Controlled Disbursement Account**").  The Controlled Disbursement Account does not carry a balance and is funded from the Operating Account immediately following the daily presentment of checks.  The Controlled Disbursement Account and the Operating Account are linked; transfers from the Operating Account to the Controlled Disbursement Account are preapproved.  Wire transfer disbursements are generally

made directly from the Operating Account.  The Excess Funds Account (as defined below) also has the capability to make cash disbursements by check or by wire.

14.    The Debtors make cash disbursements to support the following major disbursement programs:

▪ Payroll.  The Debtors use a third-party, ADP, to administer payroll disbursements.  Payroll is funded by wire to ADP two days in advance of each biweekly pay date.

▪ Accounts Payable.  The Debtors' accounts payable payments on account of revenue, interest, taxes and regulatory fees, utilities, and all other vendors are paid or auto-debited by wire, check and ACH.

▪ Healthcare and Benefits.[2]  The Debtors fund claims from the Debtors' employees through their medical plans by wire on a weekly basis.  The Debtors provide insurance to their employees through self-insurance and a third-party provider, Cigna.  Other health and welfare benefits are funded by check to pay for monthly premiums.

▪ Workers' Compensation.  The Debtors have obligations on account of workers' compensation claims at their Colorado and Arkansas operations.  The Debtors use a third party, Travelers Insurance Company, to administer payments of these obligations.  The Debtors pay a regular workers' compensation premium and remit payment by check to Travelers Insurance Company when billed for individual benefits.

15.    Funds not residing in the Operating Account are held in an account with UMB Bank (the "**Excess Funds Account**").  Funds from the Excess Funds Account are transferred to

---

[2] For more information regarding the Debtors' healthcare and benefits programs, see *Motion of Debtors for Entry of Interim and Final Orders Authorizing (i) the Debtors to (a) Pay Prepetition Wages*, *Salaries*, *Employee Benefits and Other Compensation and (b) Maintain Employee Benefits Programs and Pay Related Administrative Obligations*, (ii) Current and Former Employees to Proceed with Outstanding Workers' Compensation Claims and (iii) Financial Institutions to Honor and Process Related Checks and Transfers*, filed contemporaneously herewith.

the Operating Account as needed to fund the operations of the Debtors.  The Excess Funds

Account also has the capability to make the cash disbursements described above by check or by

wire.  As of the Petition Date, the balance of cash in the Excess Funds Account is approximately

$70,000,000.

16.      The Debtors maintain several restricted cash accounts for the purposes of funding

bonding and reclamation obligations (collectively, the "**Restricted Accounts**").  The Restricted

Accounts are sufficiently funded to meet bonding and reclamation obligations as of the Petition

Date.  In addition, the Debtors maintain three investment accounts with RBC Capital Markets

(collectively, the "**Investment Accounts**").  Each of the Investment Accounts has had a zero

balance over the period from June 1, 2016 through January 4, 2017.

17.      The Debtors also maintain a fuel purchase program (the "**Fuel Card Program**")

with WEX Bank.  The Fuel Card Program is used by the Debtors to pay the authorized fuel

purchases of approximately 210 employees.  To support this program, the Debtors have placed a

$75,000 deposit from their Operating Account with WEX Bank to secure any and all obligations

owing by the Debtors and limit credit exposure to any amount in excess of the $75,000 deposit.

Based on historical averages, the Debtors estimate that approximately $60,000 is outstanding

under the Fuel Card Program as of the Petition Date.

## Basis for Relief

### The Continued Use of the Debtors' Cash Management System Is Essential to the Debtors' Ongoing Operations and Restructuring Efforts

18.      The Debtors hereby seek authority to continue using their current centralized,

integrated Cash Management System.  It is essential that the Debtors be permitted to continue to

consolidate the management of their cash as necessary and appropriate to continue the operation

of their businesses.

19.     The basic structure of the Cash Management System constitutes the Debtors'
ordinary, usual and essential business practices.  The Cash Management System is similar to
those commonly employed by corporate enterprises comparable to the Debtors in size and
complexity.  The Cash Management System is integrated with the Debtors' accounting processes
and software that produce the Debtors' financial statements and includes the necessary
accounting controls to enable the Debtors, as well as other interested parties in these chapter 11
cases, to trace funds through the system.  The design, development, testing and implementation
of this portion of the Debtors' accounting system, and its interfacing with the Cash Management
System, require the dedicated efforts of a significant number of the Debtors' employees,
supported by outside consultants.  If the Debtors were required to dismantle the Cash
Management System, it would wreak havoc on their day-to-day operations and their accounting
processes and software.  Dismantling the Cash Management System would also impair the
Debtors' ability to generate timely reports of transactions and balances.

20.     The widespread use of similar cash management systems is attributable to the
numerous benefits they provide, including the ability to tightly control corporate funds, ensure
cash availability and reduce administrative expenses by facilitating the expeditious movement of
funds and the development of timely and accurate account balance and presentment information.
These controls are particularly important here, given the significant amount of cash that flows
through the Cash Management System on an annual basis.

21.     The Office of the United States Trustee, Region 3 (the "**U.S. Trustee**"), has
established operating guidelines for debtors in possession to facilitate the administration of
chapter 11 cases (the "**U.S. Trustee Guidelines**").  The U.S. Trustee Guidelines generally
require that a chapter 11 debtor, among other things: (a) establish one debtor-in-possession

account for all estate monies required for the payment of taxes (including payroll taxes); (b) close all existing bank accounts and open new debtor-in-possession accounts; (c) maintain a separate debtor in possession account for cash collateral; (d) obtain checks that bear the designation "Debtor-in-Possession"; and (e) reference the debtor's bankruptcy case number and type of account on each such check. *See* U.S. Trustee Guidelines § 2. Local Rule 2015-2(a) generally requires that, upon exhausting its existing check stock, a chapter 11 debtor must order new checks labeled "Debtor-in-Possession" with the corresponding bankruptcy number. These requirements are designed to establish a clear line of demarcation between prepetition and postpetition claims and payments and to help protect against a debtor's inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the commencement of the debtor's chapter 11 cases. The Debtors seek a waiver of the requirements of the U.S. Trustee Guidelines to the extent that they prohibit the Debtors from continuing to utilize their existing Cash Management System.

22.    It would be very time consuming, difficult and costly for the Debtors to establish an entirely new system of accounts and a new cash management system, and doing so would disrupt the Debtors' relationships with their key counterparties and suppliers. The attendant delays from opening new accounts, revising cash management procedures and instructing their oil and gas transport counterparties, joint billing operators and countless other entities to redirect payments would negatively impact the Debtors' ability to operate their businesses while pursuing these arrangements. Under the circumstances, maintenance of the Cash Management System is essential and clearly in the best interest of the Debtors' estates. Furthermore, preserving the "business as usual" atmosphere and avoiding the unnecessary and costly distractions that would inevitably be associated with any substantial disruption to the Cash Management System will

facilitate the Debtors' efforts in these chapter 11 cases.  In short, any benefits of the Debtors'

strict compliance with the U.S. Trustee Guidelines and Local Rule 2015-2(a) would be far

outweighed by the resulting expense, inefficiency and disruption to the Debtors' businesses.

23.    The Debtors request authority to continue using the Cash Management System in

a similar manner as they did before the Petition Date and to implement ordinary course changes

to the Cash Management System consistent with past practices.  The Debtors further seek

authority to maintain and continue to use their Fuel Card Program consistent with its terms,

including the payment of any obligations thereunder whether arising prior or subsequent to the

Petition Date and the posting of any collateral in connection therewith.  Such relief is appropriate

under section 363(c) of the Bankruptcy Code, which authorizes a debtor in possession operating

its business pursuant to section 1108 of the Bankruptcy Code to "enter into transactions . . . in

the ordinary course of business without notice or a hearing, and [] use property of the estate in

the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).

24.    One purpose of section of 363 of the Bankruptcy Code is to provide a debtor with

the flexibility to engage in the ordinary course transactions required to operate its business

without oversight by its creditors or the court.  See, e.g., *In re Roth Am., Inc.*, 975 F.2d 949, 952

(3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its

daily operations without excessive court or creditor oversight and protecting secured creditors

and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*,

325 B.R. 138, 145 (Bankr. D. Del. 2005) (same).  Included within the purview of section 363(c)

of the Bankruptcy Code is a debtor's ability to continue "routine transactions" necessitated by a

debtor's business practices. *See, e.g., In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796

(Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's

making of routine, day-to-day business decisions) (citations omitted); *In re Vision Metals*, 325

B.R. at 142 ("[W]hen a chapter 11 debtor in possession continues to operate its business, as

permitted by section 1108, no court authorization is necessary for the debtor to enter transactions

that fall within the ordinary course of its business.").

      25.     The Bankruptcy Code does not define "ordinary course of business."  In

determining whether a transaction qualifies as "ordinary course", the Third Circuit has adopted

the "horizontal" dimension test (i.e., whether "from an industry-wide perspective, the transaction

is of the sort commonly undertaken by companies in that industry") and "vertical" dimension test

(i.e., whether the transaction "is consistent with the reasonable expectations of hypothetical

creditors").  *In re Roth Am., Inc.*, 975 F.2d, at 953.  "The touchstone of 'ordinariness' is [] the

interested parties' reasonable expectations of what transactions the debtor in possession is likely

to enter in the course of its business."  *Id.* (citing *In re James A. Phillips, Inc.* 29 B.R. 391, 394

(Bankr. S.D.N.Y. 1983)); *see also In re Nellson Nutraceutical, Inc.*, 369 B.R. at 797 ("In other

words, the vertical analysis looks at the 'debtor's pre-petition business practices and conduct.'");

*Sportsman's Warehouse, Inc. v. McGillis/Eckman Invs.-Billings, LLC (In re Sportsman's*

*Warehouse, Inc.)*, Case No. 09-10990 (CSS), 2013 Bankr. LEXIS 497, at *30 (Bankr. D. Del.

Feb. 7, 2013) ("[i]n determining whether a transaction is in the ordinary course of business, the

Third Circuit has adopted the two-part horizontal and vertical dimension test"); *In re Blitz*

*U.S.A.*, Inc., 475 B.R. 209, 214 (Bankr. D. Del. 2012) (same).

      26.     Included within the purview of section 363(c) is a debtor's ability to continue the

"routine transactions" necessitated by a debtor's cash management system.  *Amdura Nat'l*

*Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to

continue the collection and disbursement of cash pursuant to their Cash Management System described above.

27.     The Court may also exercise its equitable powers to grant the relief requested herein.  Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets.  *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105 "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings"); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad"); *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.") (citations omitted); *see also In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.")

28.     Continuing the Debtors' Cash Management System without interruption is vital to the Debtors' survival.  In particular, an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994).  The requirement to maintain all accounts separately

-11-

"would be a huge administrative burden and [be] economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

29.    The Cash Management System is the mechanism whereby the Debtors are able to transfer their revenue toward the payment of their obligations and without which the Debtors' operations would be severely disrupted.  It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

30.    As noted, these procedures are similar to those employed by comparable corporate enterprises.  Moreover, the relief requested herein seeking to maintain the Debtors' existing Cash Management System is routinely granted in this district.  *See*, *e.g.*, *In re Basic Energy Servs., Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Dec. 8, 2016); *In re Key Energy Servs., Inc.*, Case No. 16-12306 (BLS) (Bankr. D. Del. Nov. 14, 2016); *In re Halcón Res. Corp.*, Case No. 16-11724 (BLS) (Bankr. D. Del. Aug. 19, 2016); *In re Seventy Seven Fin. Inc.*, Case No. 16-11409 (LSS) (Bankr. D. Del. June 28, 2016); *In re Offshore Grp. Inv. Ltd.*, Case No. 15-12422 (BLS) (Bankr. D. Del. Jan. 5, 2016); *In re Millennium Lab Holdings II, LLC*, Case No. 15-12284 (LSS) (Bankr. D. Del. Dec. 14, 2015).

<u>The Debtors Should Be Allowed to Maintain</u>
<u>Their Existing Bank Accounts and Business Forms</u>

31.    To avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid in the Debtors' efforts to preserve and enhance the value of the Debtors' estates, it is important that the Debtors be permitted to continue to maintain the Bank Accounts with the same account numbers following

the commencement of these chapter 11 cases, subject to a prohibition against honoring checks issued or dated before the Petition Date absent a prior order of the Court.

32.     By avoiding the disruption and delay to the Debtors' disbursements that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest, including employees, vendors and counterparties, will be best served by preserving business continuity.  The benefit to the Debtors, their business operations and all parties in interest will be considerable.  The confusion that would ensue absent the relief requested herein would substantially hinder the Debtors' restructuring efforts.

33.     This Court has authority to waive the strict enforcement of the bank account closing requirements imposed pursuant to the U.S. Trustee Guidelines.  Similar relief is routinely granted in this district.  *See*, *e.g.*, *In re Key Energy Servs., Inc.*, No. 16-12306 (BLS) (Bankr. D. Del. Nov. 14, 2016); *In re Halcón Res. Corp.,* Case No. 16-11724 (BLS) (Bankr. D. Del. Aug. 19, 2016); *In re Seventy Seven Fin. Inc.*, Case No. 16-11409 (LSS) (Bankr. D. Del. June 28, 2016); *In re Offshore Grp. Inv. Ltd.*, Case No. 15-12422 (BLS) (Bankr. D. Del. Jan. 5, 2016); *In re Parallel Energy LP*, Case No. 15-12263 (KG) (Bankr. D. Del. Dec. 22, 2015); *In re New Gulf Res., LLC*, Case No. 15-12566 (BLS) (Bankr. D. Del. Dec. 18, 2015); *In re Hercules Offshore, Inc.*, Case No. 15-11685 (KJC) (Bankr. D. Del. Sept. 8, 2015).

34.     To minimize expenses, the Debtors further request that they be authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks and other business forms (collectively, the "**Business Forms**"), substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession.  As a result of the press releases issued by the Debtors and other press coverage, parties doing business with the Debtors

undoubtedly will be aware of the Debtors' status as debtors in possession.  In the absence of such relief, the Debtors' estates will be required to bear a potentially significant expense that the Debtors respectfully submit is unwarranted.

35.     Once the Debtors' existing checks have been used, the Debtors will, when reordering checks, ensure that the designation "Debtor in Possession" and the corresponding bankruptcy case number be printed on all checks.  With respect to electronic checks and checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of the date of entry of this Order.  In other cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtors in possession" label with similar conditions.  *See*, *e.g.*, *In re Basic Energy Servs., Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Dec. 8, 2016); *In re Key Energy Servs., Inc.*, Case No. 16-12306 (BLS) (Bankr. D. Del. Nov. 14, 2016); *In re Parallel Energy LP*, Case No. 15-12263 (KG) (Bankr. D. Del. Dec. 22, 2015); *In re New Gulf Res., LLC*, Case No. 15-12566 (BLS) (Bankr. D. Del. Dec. 18, 2015); *In re Santa Fe Gold Corp.*, Case No. 15-11761 (MFW) (Bankr. D. Del. Aug. 27, 2015); *In re EveryWare Global, Inc.*, Case No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015).

36.     If the Debtors are not permitted to maintain and use their Bank Accounts and continue to use their existing Business Forms as set forth herein, the resulting prejudice will include (a) disruption of the ordinary financial affairs and business operations of the Debtors, (b) delay in the administration of the Debtors' estates, (c) compromise of the Debtors' internal controls and accounting system and (d) cost to the estates to set up new systems and open new accounts and print new business forms.

<u>The Debtors Should Be Authorized to Open and Close Bank Accounts</u>

37.     Pursuant to this Motion, the Debtors also seek authorization to implement changes to the Cash Management System in the ordinary course of business, including opening any additional bank accounts or closing any existing Bank Account as they may deem necessary and appropriate.  The Debtors request that the Court authorize the Banks to honor the Debtors' requests to open or close, as the case may be, such bank accounts or additional bank accounts; *provided*, *however*, that, unless otherwise ordered by this Court, the Debtors shall open any such new bank account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a bank willing to immediately execute such an agreement.

38.     The Debtors further request that nothing contained in the interim and final orders granting the relief requested herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

<u>The Banks Should Be Authorized to Continue to Treat, Service and<br>Administer the Bank Accounts in the Ordinary Course of Business</u>

39.     The Debtors also seek entry of interim and final orders granting the Banks authority to continue to treat, service and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the ordinary course, and to receive, process, honor and pay any and all postpetition checks, drafts, wires or automated clearinghouse transfers (collectively, "**ACH Transfers**") drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent that the Debtors have good funds standing to their credit with such Bank.

40.     The Debtors request that the Court grant relief from the U.S. Trustee Guidelines to the extent that they prohibit the Debtors from continuing to utilize their existing Cash Management System.

41.     Notwithstanding anything to the contrary in any other order of this Court, the Debtors request that the Banks be authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date.  Pursuant to the relief requested in this Motion, the Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

42.     The Debtors also request that, in accordance with current practice and the agreements governing the Bank Accounts, the Banks be authorized to "charge back" to the Debtors' Bank Accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and the Debtors be authorized to pay any fees and expenses owed to the Banks, in each case, regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.

43.     The Debtors further request that any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any

Debtor pursuant to a "midnight deadline" or otherwise, be deemed to be paid prepetition, whether or not actually debited from such Bank Account prepetition.

<u>The Deposit and Investment Requirements of Section 345(b) of the<br>Bankruptcy Code Should Be Waived on an Interim Basis</u>

44.     Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).   For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) requires the estate to obtain, from the entity with which the money is deposited or invested, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the court, for cause, orders otherwise.

45.     Pursuant to Local Rule 2015-2(b), and subject to certain exceptions not relevant here, a waiver of the requirements set forth in section 345(b) of the Bankruptcy Code may not be granted without notice and a hearing.   However, Local Rule 2015-2(b) provides that "if a motion for such a waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held."  Del. Bankr. L.R. 2015-2(b).

46.     Here, the Debtors satisfy both the procedural and substantive requirements necessary to obtain an interim waiver of section 345(b) of the Bankruptcy Code.  The Debtors have filed this Motion on the first day of their chapter 11 cases, and the Debtors collectively have more than 200 creditors. Accordingly, the Debtors' present request for an interim waiver is appropriate.

-17-

47.    The Debtors submit that cause exists to waive the investment and deposit restrictions of section 345(b) of the Bankruptcy Code on an interim basis to the extent that the Debtors' cash management deposits do not comply.  The banks at which the Debtors maintain accounts are financially stable banking institutions and are FDIC insured (up to an applicable unit per account).  Because the Debtors do not and do not plan to have any investments other than cash, the Debtors do not believe that any additional guaranties or sureties are necessary. Finally, the fact that these are prepackaged chapter 11 cases filed with the support of the Debtors' primary creditor groups further weighs in favor of granting the relief.  The Debtors intend to be in chapter 11 only a short period of time, and the costs of having to obtain additional guaranties or sureties far outweigh the risk of the Debtors continuing to maintain their traditional cash-only Bank Accounts and for the short period of time they remain in chapter 11.

48.    Courts in other large chapter 11 cases in this district have regularly granted such an interim waiver under similar circumstances.  *See, e.g.*, *In re Key Energy Servs., Inc.*, Case No. 16-12306 (BLS) (Bankr. D. Del. Oct. 25, 2016); *In re Seventy Seven Fin. Inc.*, Case No. 16-11409 (LSS) (Bankr. D. Del. June 8, 2016); *In re New Gulf Res., LLC*, Case No. 15-12566 (BLS) (Bankr. D. Del. Dec. 18, 2015); *In re Haggen Holdings, LLC*, Case No. 15-11874 (KG) (Bankr. D. Del. Sep. 10, 2015); *In re The Standard Register Co.*, Case No. 15-10541 (BLS) (Bankr. D. Del. Mar. 13, 2015).

**<u>Necessity for Immediate Relief</u>**

49.    Rule 6003 of the Federal Rules of Bankruptcy Procedure provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay

all or part of a claim that arose before the filing of the petition . . . ."  If the Debtors are not

permitted to continue their ordinary business operations by continuing to use their Cash

Management System in its current form, the Debtors could suffer immediate and irreparable

harm.  Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

## Debtors' Reservation of Rights

50.     Nothing contained herein is intended or should be construed as an admission as to

the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any

claim, or an approval or assumption of any agreement, contract or lease under section 365 of the

Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claims related to

their Cash Management System under applicable non-bankruptcy law.  Likewise, if the Court

grants the relief sought herein, any payment made pursuant to the Court's order is not intended

and should not be construed as an admission as to the validity of any claim or a waiver of the

Debtors' rights to dispute such claim subsequently.

## Waiver of Stay Under Bankruptcy Rule 6004(h)

51.     The Debtors also request that, to the extent applicable to the relief requested in

this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that

"[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until

the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R.

Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is

necessary for the Debtors to operate their businesses without interruption and to preserve value

for their estates.  Accordingly, the Debtors respectfully request that the Court waive the 14-day

stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein

justifies immediate relief.

## **Notice**

52.     Notice of this Motion will be provided to (a) the Office of the United States

Trustee for the District of Delaware (the "**U.S. Trustee**"), (b) each of the Debtors' twenty (20)

largest unsecured creditors on a consolidated basis, (c) Bracewell LLP as counsel to KeyBank

National Association, as administrative agent under that certain Credit Agreement, dated as of

March 29, 2011, as amended, restated, modified and supplemented from time to time, (d)

Kirkland & Ellis LLP as counsel to that certain ad hoc committee of holders of 6.75% senior

notes due 2021 and 5.75% senior notes due 2023 issued by the Debtors (the "**Ad Hoc Group**"),

(e) the Securities and Exchange Commission, (f) the Internal Revenue Service, (g) the United

States Attorney's Office for the District of Delaware and (h) each of the Banks listed on Exhibit

A (collectively, the "**Notice Parties**").

53.     Notice of this Motion and any order entered hereon will be served on all parties

required by Local Rule 9013-1(m).  A copy of this Motion and any order approving it will also

be made available on the Debtors' case information website located at

*https://cases.primeclerk.com/bcei*.  Based on the urgency of the circumstances surrounding this

Motion and the nature of the relief requested herein, the Debtors respectfully submit that no

further notice is required.

## **No Prior Request**

54.     The Debtors have not previously sought the relief requested herein from this or

any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an interim and final

order, substantially in the forms attached hereto as Exhibit C and Exhibit D, respectively,

granting the relief requested herein and such other and further relief as the Court deems just and

proper.

-20-

Dated:    January 4, 2017
          Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Mark D. Collins*
Mark D. Collins (No. 2981)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701
collins@rlf.com
steele@rlf.com
schlauch@rlf.com

-and-

DAVIS POLK & WARDWELL LLP

Marshall S. Huebner
Brian M. Resnick
Adam L. Shpeen
450 Lexington Avenue
New York, New York  10017
Tel: (212) 450-4000
Fax: (212) 607-7983
marshall.huebner@davispolk.com
brian.resnick@davispolk.com
adam.shpeen@davispolk.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

Bank Accounts

| DEBTOR | FINANCIAL INSTITUTION | ACCOUNT NUMBER | ACCOUNT DESCRIPTION |
|---|---|---|---|
| Bonanza Creek Energy, Inc. | BBVA Compass | ******3055 | Operating Account |
| Bonanza Creek Energy, Inc. | BBVA Compass | ******5756 | Controlled Disbursement Account |
| Bonanza Creek Energy, Inc. | RBC Capital Markets – Blackrock | **278 | Investment Account ($0 Balance Since May 2015) |
| Bonanza Creek Energy, Inc. | RBC Capital Markets – Fidelity | *******1065 | Investment Account ($0 Balance Since May 2015) |
| Bonanza Creek Energy, Inc. | RBC Capital Markets – JPMorgan | *******0458 | Investment Account ($0 Balance Since May 2015) |
| Holmes Eastern Company, LLC | UMB BANK N.A. | ******0540 | Excess Funds Account |
| Holmes Eastern Company, LLC | UMB BANK N.A. | ******7959 | Utility Adequate Assurance Deposit Account[1] |

---

[1] This account is being established in connection with the relief requested in the *Motion of Debtors for Entry of Interim and Final Orders (i) Prohibiting Utilities From Altering, Refusing or Discontinuing Service, (ii) Deeming Utility Companies Adequately Assured of Future Performance and (iii) Establishing Procedures for Determining Requests for Additional Adequate Assurance*.

**Exhibit B**

### *Deposit and Payment Processing*



### *UMB Deposit and Payment Processing*



**<u>Exhibit C</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| _____ | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BONANZA CREEK ENERGY, INC., *et al.*, | ) | Case No. 17-_____ (___) |
| | ) | |
| Debtors.[1] | ) | Joint Administration Requested |
| | ) | |
| _____ | ) | |

### INTERIM ORDER AUTHORIZING (I) THE DEBTORS TO CONTINUE TO MAINTAIN EXISTING CASH MANAGEMENT SYSTEM, FUEL CARD PROGRAM, BANK ACCOUNTS AND BUSINESS FORMS AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of Bonanza Creek Energy, Inc. and its subsidiaries that are debtors and debtors in possession in these chapter 11 cases (each, a "**Debtor**" and together, the "**Debtors**") for entry of interim and final orders pursuant to sections 105(a), 345, 363(c)(1) and 364(a) of the Bankruptcy Code, authorizing the Debtors to continue to use their existing cash management system and maintain existing bank accounts and business forms; and this Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012; and it having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core

---

[1] The Debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are: Bonanza Creek Energy, Inc. (0631), Bonanza Creek Energy Operating Company, LLC (0537), Bonanza Creek Energy Resources, LLC (6378), Holmes Eastern Company, LLC (5456), Rocky Mountain Infrastructure, LLC (6659), Bonanza Creek Energy Upstream LLC (6378) and Bonanza Creek Energy Midstream, LLC (6378). The Debtors' mailing address is 410 17th Street, Suite 1400, Denver, Colorado 80202.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.       The relief requested in the Motion is hereby granted on an interim basis.

2.       The Debtors are, in their sole discretion, authorized and empowered, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to continue to maintain, operate and make transfers under their Cash Management System as described in the Motion.

3.       The Debtors shall maintain records of all transfers within the Cash Management System to the same extent as they were recorded by the Debtors before the commencement of these chapter 11 cases.

4.       To the extent that cash, including cash collateral (as defined in the Bankruptcy Code), of any Debtor is used by another Debtor, the Debtor funding such use shall have an allowed superpriority administrative expense claim pursuant to sections 503(b) and 507(a) of the Bankruptcy Code junior in priority only to Adequate Protection Claims (as defined in the *Interim Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy*

*Rules 2002, 4001, 6004 and 9014, and Local Rule 4001-2 (i) Authorizing Debtors to Use Cash Collateral; (ii) Granting Adequate Protection to Prepetition Secured Parties; (iii) Modifying Automatic Stay; (iv) Granting Related Relief; and (v) Scheduling a Final Hearing*).

5.      The Debtors are authorized to continue to maintain the Bank Accounts with the same account numbers following the commencement of these chapter 11 cases.

6.      The Banks are authorized to (a) continue to treat, service and administer the Bank Accounts, as accounts of the respective Debtor as a debtor in possession, without interruption and in the ordinary course of business and (b) honor and pay any and all postpetition checks, drafts, wires or ACH Transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent that the Debtors have sufficient funds standing to their credit with such Bank.

7.      The Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Banks believe that the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

8.      The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

9.      In accordance with current practice and any applicable agreement governing the Bank Accounts, the Banks are authorized to "charge back" to the Debtors' accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and the Debtors are authorized to pay any fees and expenses owed to the Banks (and the Banks are authorized to debit or charge back the Bank Accounts for any such fees and expenses unless notified by the Debtors that any such fees or expenses are disputed), in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.

10.      Any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

11.      The Debtors are, in their sole discretion, authorized to implement changes to the Cash Management System in the ordinary course of business, including opening any additional Bank Accounts, or closing any existing Bank Account as they may deem necessary and appropriate.

12.      For Banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall have 45 days from the Petition Date (the "**Extension Period**") within which to comply with section 345(b) of the Bankruptcy Code or to make arrangements to which the U.S. Trustee agrees, and such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of section 345(b) of the Bankruptcy Code in these cases.  For Banks that have signed a Uniform Depository Agreement

with the U.S. Trustee, all Bank Accounts with such Banks are deemed to satisfy section 345(b) of the Bankruptcy Code.

13.     Within 14 days of the date of entry of this Order, with respect to Banks that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall (a) contact each Bank; (b) provide the Bank with each of the Debtors' tax identification numbers; and (c) identify each of their Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

14.     Within 30 days of the date of entry of this Order, with respect to Banks that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall send the Banks a Uniform Depository Agreement in a form prescribed by the U.S. Trustee and request that the Banks execute said Uniform Depository Agreement.  The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

15.     The Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such Bank Accounts or additional Bank Accounts, the Debtors shall give notice to the U.S. Trustee, the Ad Hoc Group and any statutory committee appointed in these chapter 11 cases within 14 days of opening a new Bank Account or closing an existing Bank Account; *provided*, *however*, that, unless otherwise ordered by this Court, the Debtors shall open any new Bank Account at a Bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a Bank willing to immediately execute such an agreement.

16.    Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

17.    The Debtors are authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks and other business forms substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession, *provided* that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, ensure that the designation "Debtor in Possession" and the corresponding bankruptcy case number be printed on all checks; *provided further* that, with respect to electronic checks and checks that the Debtors  or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of the date of entry of this Order.

18.    The Debtors are authorized to maintain and continue to use their Fuel Card Program consistent with its terms, including the payment of any obligations thereunder whether arising before or after the Petition Date and the posting of any collateral in connection therewith.

19.    A final hearing to consider the relief requested in the Motion shall be held on _____, 2017 at _____ (Prevailing Eastern Time) and any objections or responses to the Motion shall be filed and served on the Notice Parties so as to be actually received on or prior to on ____, 2017 at 4:00 p.m.  (Prevailing Eastern Time).

20.    Nothing in this Order shall be deemed to constitute (a) a grant of third-party beneficiary status or bestowal of any additional rights on any third party or (b) a waiver of any rights, claims or defenses of the Debtors.

21.     The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

22.     Notwithstanding any Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rules that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

24.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.     Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

26.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.


Dated: _____, 2017
         Wilmington, Delaware


                                             _____
                                             UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit D</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

_____
)
In re:                                                    )        Chapter 11
)
BONANZA CREEK ENERGY, INC., *et al.*,    )        Case No. 17-_____ (___)
)
Debtors.[1]                                     )        Jointly Administered
)
_____ )

**FINAL ORDER AUTHORIZING (I) THE DEBTORS TO CONTINUE TO MAINTAIN
EXISTING CASH MANAGEMENT SYSTEM, FUEL CARD PROGRAM, BANK
ACCOUNTS AND BUSINESS FORMS AND (II) FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of Bonanza Creek Energy, Inc. and its subsidiaries that

are debtors and debtors in possession in these chapter 11 cases (each, a "**Debtor**" and together,

the "**Debtors**") for entry of a final order pursuant to sections 105(a), 345, 363(c)(1) and 364(a) of

the Bankruptcy Code authorizing the Debtors to continue to use their existing cash management

system and maintain existing bank accounts and business forms; and this Court having

jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

*Delaware* dated February 29, 2012; and it having authority to hear the matters raised in the

Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core

---

[1] The Debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are:  Bonanza Creek Energy, Inc. (0631), Bonanza Creek Energy Operating Company, LLC (0537), Bonanza Creek Energy Resources, LLC (6378), Holmes Eastern Company, LLC (5456), Rocky Mountain Infrastructure, LLC (6659), Bonanza Creek Energy Upstream LLC (6378) and Bonanza Creek Energy Midstream, LLC (6378).  The Debtors' mailing address is 410 17th Street, Suite 1400, Denver, Colorado 80202.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held an interim hearing on the Motion; and the Court having granted interim relief on the Motion on _____ , 2017 (D.I.  [●]); [and the Court having held a final hearing on the Motion;] and the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these cases; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted.

2.      The Debtors are, in their sole discretion, authorized and empowered, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to continue to maintain, operate and make transfers under their Cash Management System as described in the Motion.

3.      The Debtors shall maintain records of all transfers within the Cash Management System to the same extent as they were recorded by the Debtors before the commencement of these chapter 11 cases.

4.      To the extent that cash, including cash collateral (as defined in the Bankruptcy Code), of any Debtor is used by another Debtor, the Debtor funding such use shall have an allowed superpriority administrative expense claim pursuant to sections 503(b) and 507(a) of the Bankruptcy Code junior in priority only to Adequate Protection Claims (as defined in the *Interim Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy*

*Rules 2002, 4001, 6004 and 9014, and Local Rule 4001-2 (i) Authorizing Debtors to Use Cash Collateral; (ii) Granting Adequate Protection to Prepetition Secured Parties; (iii) Modifying Automatic Stay; (iv) Granting Related Relief; and (v) Scheduling a Final Hearing).*

5.      The Debtors are authorized to continue to maintain the Bank Accounts with the same account numbers following the commencement of these chapter 11 cases.

6.      The Banks are authorized to (a) continue to treat, service and administer the Bank Accounts, as accounts of the respective Debtor as a debtor in possession, without interruption and in the ordinary course of business and (b) receive, process, honor and pay any and all postpetition checks, drafts, wires or ACH Transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent that the Debtors have sufficient funds standing to their credit with such Bank.

7.      The Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Banks believe that the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

8.      The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

9.      In accordance with current practice and any applicable agreement governing the Bank Accounts, the Banks are authorized to "charge back" to the Debtors' accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and the Debtors are authorized to pay any fees and expenses owed to the Banks (and the Banks are authorized to debit or charge back the Bank Accounts for any such fees and expenses unless notified by the Debtors that any such fees or expenses are disputed), in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.

10.      Any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

11.      The Debtors are authorized to implement changes to the Cash Management System in the ordinary course of business, including opening any additional Bank Accounts or closing any existing Bank Account as they may deem necessary and appropriate.

12.      The Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such Bank Accounts or additional Bank Accounts, the Debtors shall give notice to the U.S. Trustee, the Ad Hoc Group and any statutory committee appointed in these chapter 11 cases within 14 days after opening a new Bank Account or closing an existing Bank Account; *provided*, *however*, that, unless otherwise ordered by this Court, that the Debtors shall open any such new Bank Account at a Bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a Bank willing to immediately execute such an agreement.

13.     For Banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall have 45 days from the Petition Date (the "**Extension Period**") within which to comply with section 345(b) of the Bankruptcy Code or to make arrangements to which the U.S. Trustee agrees, and such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of section 345(b) of the Bankruptcy Code in these cases. For Banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Bank Accounts with such Banks are deemed to satisfy section 345(b) of the Bankruptcy Code.

14.     Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

15.     The Debtors are authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks and other business forms substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession, *provided* that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, ensure that the designation "Debtor in Possession" and the corresponding bankruptcy case number be printed on all checks; *provided further* that, with respect to electronic checks and checks that the Debtors  or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of the date of entry of this Order.

16.     The Debtors are authorized to maintain and continue to use their Fuel Card Program consistent with its terms, including the payment of any obligations thereunder whether arising before or after the Petition Date and the posting of any collateral in connection therewith.

17.     Nothing in this Order shall be deemed to constitute (a) a grant of third-party beneficiary status or bestowal of any additional rights on any third party or (b) a waiver of any rights, claims or defenses of the Debtors.

18.     Notwithstanding any Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rules that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

20.     Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

21.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.


Dated:     _____, 2017
          Wilmington, Delaware


          _____
          UNITED STATES BANKRUPTCY JUDGE