**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BONANZA CREEK ENERGY, INC., *et al.*, | ) | Case No. 17-10015 (KJC) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |
| | ) | **Re: D.I. 23 & 85** |

### FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 361, 362, 363, 503, AND 507, BANKRUPTCY RULES 2002, 4001, 6004 AND 9014, AND LOCAL RULE 4001-2 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Bonanza Creek Energy, Inc. and its subsidiaries that are debtors and debtors in possession in these cases (each, a "Debtor" and together, the "Debtors") in the above-captioned cases (the "Cases"), pursuant to sections 105(a), 361, 362, 363, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things:

> (a)     authorization for the Debtors, pursuant to sections 105(a), 361, 362, 363, and 507 of the Bankruptcy Code to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of this Order (the "Final Order"), and (ii) provide adequate

---

[1]     The Debtors in the Cases and the last four digits of their respective Employer Identification Numbers are:  Bonanza Creek Energy, Inc. (0631), Bonanza Creek Energy Operating Company, LLC (0537), Bonanza Creek Energy Resources, LLC (6378), Holmes Eastern Company, LLC (5456), Rocky Mountain Infrastructure, LLC (6659), Bonanza Creek Energy Upstream LLC (6378) and Bonanza Creek Energy Midstream, LLC (6378).  The Debtors' mailing address is 410 17th Street, Suite 1400, Denver, Colorado 80202.

protection to KeyBank National Association, as administrative agent (in such capacity, the "RBL Agent") under the RBL Credit Agreement (as defined herein) and the other Prepetition Secured Parties (as defined herein);

(b)    authorization to grant the Adequate Protection Liens and the Adequate Protection Claims, including authorization to grant adequate protection liens on any proceeds and property recovered in respect of the Debtors' claims and causes of action of the Debtors arising under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions") or any other state or federal law;

(c)    modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

(d)    waiver of all rights to surcharge any Prepetition Collateral or Adequate Protection Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)    waiver of the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral; and

(f)    waiver of any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h), to the extent applicable).

This Court having jurisdiction to consider the matters raised in the Motion pursuant to

28 U.S.C. § 1334, and the *Amended Standing Order of Reference from the United States District

Court for the District of Delaware* dated February 29, 2012; and it having authority to hear the

matters raised in the Motion pursuant to 28 U.S.C. § 157; and it having venue pursuant to 28

U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core

proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and notice of the

Motion having been given to (a) the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee"), (b) each of the Debtors' twenty (20) largest unsecured creditors

on a consolidated basis, (c) Bracewell LLP as counsel to the RBL Agent, (d) Kirkland & Ellis

LLP as counsel to that certain ad hoc committee of holders of 6.75% senior notes due 2021 and

5.75% senior notes due 2023 issued by the Debtors (the "Ad Hoc Committee"), (e) the Securities

and Exchange Commission, (f) the Internal Revenue Service and (g) the United States Attorney's

Office for the District of Delaware; and it appearing that no other or further notice need be

provided; and the Court having reviewed the Motion; and the Court having entered an interim

order granting the relief sought by the Motion on an interim basis on January 5, 2017 [D.I. 85]

(the "Interim Order"); and the Final Hearing having been held by this Court on January 30, 2017;

and the Court having determined that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and the relief requested in the Motion being in the best

interests of the Debtors, their creditors, their estates and all other parties in interest in these cases;

and upon all of the proceedings had before the Court; and after due deliberation and sufficient

cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

**A.      Debtors' Admissions With Respect to the Prepetition Secured Indebtedness.**

Subject to paragraph 17, the Debtors admit, stipulate, and agree that:

i.      prior to the date of the commencement of the Cases (the "Petition Date"), the RBL Lenders (as defined herein) made certain loans, advances, and other extensions of credit pursuant to and in accordance with the terms and conditions of that certain Credit Agreement dated as of March 29, 2011 (as amended, restated or otherwise modified from time to time, the "RBL Credit Agreement," and together with all other Loan Documents (as defined in the RBL Credit Agreement),[2] the "RBL Credit Documents"), which RBL Credit Documents include, but are not limited to, the RBL Security Documents (defined below), among Bonanza Creek Energy, Inc. ("BCEI"), as Borrower, the RBL Agent, the lenders named therein (such lenders, the "RBL Lenders"), certain treasury management providers, and each other Secured Party (the RBL Agent, the RBL Lenders, treasury management providers, and the other Secured Parties, collectively, the "Prepetition Secured Parties").

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the RBL Credit Agreement.

ii.     as of the Petition Date, BCEI was justly and lawfully indebted and liable, without defense, counterclaim, or offset, in the aggregate principal amount of $191,666,666.67 in Advances, plus accrued and unpaid interest, fees, and other costs, expenses, charges, and amounts due and payable under the RBL Credit Documents (collectively, the "Prepetition Secured Indebtedness"), which Prepetition Secured Indebtedness has been guaranteed on a joint and several basis by the subsidiaries of BCEI (the "Guarantors" and, together with BCEI, the "RBL Credit Parties").

iii.    the Prepetition Secured Indebtedness, including the amounts specified in this paragraph A, constitutes a legal, valid, and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, or defense to the Prepetition Secured Parties.  Other than the UMB Reservation of Rights (as defined below), none of the RBL Credit Parties, either collectively or individually, has or shall assert any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Secured Indebtedness.

iv.     the Prepetition Secured Indebtedness and any amounts previously paid to any Prepetition Secured Party pursuant to the terms of the RBL Credit Agreement, on account thereof, or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

**B.     Debtors' Admissions With Respect to Collateral and Liens.** Subject to paragraph 17 and the UMB Reservation of Rights, the Debtors admit, stipulate, and agree that:

i.      pursuant to (a) that certain Security Agreement dated as of March 29, 2011 (as amended, supplemented or otherwise modified from time to time, the "RBL Security Agreement") and (b) that certain Pledge Agreement dated as of March 29, 2011 (as amended, supplemented or otherwise modified from time to time, the "RBL Pledge Agreement," and together with the RBL Security Agreement and all other documents and agreements defined as Security Instruments under the RBL Credit Agreement, "RBL Security Documents"), the Debtors granted security interests in, and continuing liens on, the real, personal and other property of the Debtors described in, and to the extent set forth in, the RBL Security Documents (the "Prepetition Collateral") to and/or for the benefit of the Prepetition Secured Parties (the "Prepetition Liens") and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits of the Prepetition Collateral;

4

ii.   the RBL Security Documents are valid and binding agreements and obligations of the Debtors, and the Prepetition Liens constitute valid, binding, enforceable, and perfected security interests and liens, which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

iii.   the RBL Agent has properly perfected its security interests and Prepetition Liens in and on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets, and/or by filing UCC-1 financing statements, mortgages, deeds of trust, or other required documents against the Debtors and such Prepetition Collateral in the proper state or county offices for the perfection of such security interests and liens.

C.   **Debtors' Admissions With Respect to Cash Collateral**. The Debtors admit, stipulate, and agree that other than the UMB Cash, cash in the Debtors' deposit accounts constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105(a), 362, and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, for any diminution in value of their respective interests in the Prepetition Collateral as of the Petition Date resulting from the use of Cash Collateral; the use, sale, or lease of the Prepetition Collateral; and/or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code.  For the avoidance of doubt, the rights of the RBL Agent and Prepetition Secured Parties to dispute whether approximately $70 million of cash (the "UMB Cash") held by Debtor Holmes Eastern Company, LLC as of the Petition Date in a deposit account at UMB Bank, N.A. (the "UMB Deposit Account") constitutes Prepetition Collateral, including Cash Collateral, for purposes hereunder as well as all defenses of the Debtors thereto are expressly reserved.  Notwithstanding anything in this paragraph or elsewhere in this Final Order to the contrary, (i) the Debtors make no admission, stipulation or agreement as to the UMB Cash in the UMB Deposit Account and

(ii) all rights of the RBL Agent and the Prepetition Secured Parties to assert any and all rights, interests or claims they may have to/in the UMB Cash, including that the UMB Cash constitutes Prepetition Collateral, including Cash Collateral, as well as all defenses of the Debtors and all other parties with respect thereto, are expressly reserved (the "<u>UMB Reservation Of Rights</u>").

**D.     Admissions Binding.** The Debtors' admissions shall be binding on the Debtors and their respective representatives, successors, and assigns and, subject to any action timely commenced by any official creditors committee appointed in the Cases (the "<u>Committee</u>") or any other party in interest prior to the applicable Challenge Deadline (as defined herein), on each of the Debtors' estates and all creditors thereof and each of their respective representatives, successors, and assigns, including any trustee or representative appointed in these Cases.

**E.     Releases; Investigation.** Each Debtor hereby forever waives and releases any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against each Prepetition Secured Party (in its capacity as such) arising prior to the date of the entry of this Final Order, whether arising at law or in equity, including, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to section 105(a) or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, other than the UMB Reservation of Rights.

**F.     Need to Use Cash Collateral.** The Debtors need to use the Prepetition Collateral, including the Cash Collateral (subject to the Budget (as defined herein)), in order to, among other things, preserve, maintain, and maximize the value of their assets and businesses. The ability of the Debtors to maintain liquidity through the use of the Prepetition Collateral, including the Cash Collateral, is vital to the Debtors and their efforts to maximize the value of

6

their assets. Accordingly, the Debtors have demonstrated good and sufficient cause for the relief granted herein.

G.    **Consent by Prepetition Secured Parties**. The Prepetition Secured Parties consent to the Debtors' use of the Prepetition Collateral, including Cash Collateral, in accordance with and subject to the terms and conditions provided for in this Final Order.

H.    **Arm's-Length, Good Faith Negotiations**. The terms of this Final Order were negotiated in good faith and at arm's-length between the Debtors, the RBL Agent, and the other Prepetition Secured Parties and are within the Debtors' business judgment.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE FINAL HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1.    **Motion Granted**. The Motion is granted in accordance with the terms of this Final Order. Any objections to the Motion or with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    **Authorization to Use Cash Collateral.**

(a)        Subject to the terms and conditions of this Final Order, the Court hereby authorizes the Debtors' use of Cash Collateral during the period beginning with the Petition Date and ending on the Termination Date (as defined herein), solely and exclusively for the disbursements set forth in the 13-week Budget attached as **Exhibit 1** hereto (the "Initial Budget" and, as such initial budget may be modified by any Approved Budget (as defined below) and as otherwise modified from time to time by the Debtors with the prior written

consent of the RBL Agent and in consultation with the Required Supporting Noteholders (as defined in the Restructuring Support Agreement[3]), the "Budget"), subject to Permitted Deviations (as defined below).   Proceeds of Prepetition Collateral in excess of approved disbursements under the Budget subject to the Permitted Deviations (but not the UMB Cash unless otherwise ordered by the Court) shall be kept in the deposit account held by Debtor Bonanza Creek Energy, Inc. at BBVA Compass Bank.

> (b)        The Debtors shall comply with the Budget subject to the variance provisions set forth in this paragraph. On the Thursday of the fourth full week after the Petition Date and the Thursday of each four week anniversary thereafter, the Debtors shall deliver a proposed updated budget for the following 13-week period (beginning with the week ending on the first Friday following the required date of delivery) substantially in the form of the Initial Budget (each a "Proposed Budget") to the professional advisors to the RBL Agent and counsel to the Supporting Noteholders.  On the Thursday of the first full week after the Petition Date and the Thursday of each week thereafter, the Debtors shall deliver to the professional advisors to the RBL Agent and counsel to the Supporting Noteholders a weekly variance report, in form and detail reasonably satisfactory to the RBL Agent, that sets forth and compares (i) for the previous week through Friday, the actual cash receipts and disbursements of the Debtors for such week with the budgeted receipts and disbursements in the Budget for such week and (ii) for the

---

[3]   As used herein, "Restructuring Support Agreement" means that certain Restructuring Support and Lock-Up Agreement, dated as of December 23, 2016, by and between (a) the Debtors, (b) certain beneficial holders, or investment advisors or managers for the account of beneficial holders, of (i) the 6¾% senior notes due 2021 issued under that certain indenture dated as of April 9, 2013 by and among BCEI, as issuer, certain of the Debtors, as guarantors from time to time party thereto and Delaware Trust Company, as trustee (as successor to Wells Fargo Bank, National Association) (the "Trustee") and (ii) the 5¾% senior notes due 2023 issued under that certain indenture dated as of July 18, 2014 by and among BCEI, as issuer, certain of the Debtors, as guarantors from time to time party thereto and the Trustee, as trustee (as successor to Wells Fargo Bank, National Association), that execute signature pages hereto (such beneficial holders, or investment advisors or managers for the account of beneficial holders, the "Supporting Noteholders"), and (c) NGL Energy Partners LP and its indirect subsidiary NGL Crude Logistics, LLC.

cumulative prior four (4) week period (or any applicable shorter period for any report delivered prior to the fifth week after the Petition Date), the actual cash receipts and disbursements of the Debtors for such cumulative four (4) week period (or any applicable shorter period for any report delivered prior to the fifth week after the Petition Date) with the budgeted receipts and disbursements in the Budget for such cumulative four (4) week period (or any applicable shorter period for any report delivered prior to the fifth week after the Petition Date).  Each week, commencing with the first full week after the Petition Date, the Debtors shall ensure that at no time shall the cumulative total actual cash disbursements of the Debtors (as designated in the Budget, but excluding disbursements related to the Debtors' professional fees or the professional fees paid by the Debtors for any official committee or other party in interest in the Cases, legal fees related to litigation and adequate protection payments to the Prepetition Secured Parties) for the immediately preceding four weeks ending on Friday exceed 115% of the aggregate cumulative amount budgeted therefor in the Budget for such period; *provided*, that, for the first three full weeks after the Petition Date, the Debtors shall instead ensure that at no time shall the cumulative total actual cash disbursements of the Debtors for the period beginning with the week of the Petition Date through and including the immediately preceding Friday exceed 120% of the cumulative budgeted total cash disbursements of the Debtors for such period as set forth in the applicable Budget (such deviations, the "Permitted Deviations").  The RBL Agent shall approve or reject each Proposed Budget in writing by the Thursday of the week immediately following the week in which the Debtors deliver such Proposed Budget to the RBL Agent and the RBL Agent shall be deemed to have approved the Proposed Budget if no objection is delivered in writing (including by email) by the RBL Agent on or prior to such Thursday to counsel to the Debtors.  Any such Proposed Budget, upon the approval (or deemed approval) of the RBL

Agent, shall become the "Approved Budget" and the "Budget", effective as of the Friday of the week immediately following the week in which the Debtors delivered the Proposed Budget to the RBL Agent for the period of time covered thereby, and shall prospectively replace any prior Approved Budget. In the event the RBL Agent and the Debtors fail to agree on an Approved Budget, the Debtors may continue to use Cash Collateral solely in accordance with the last Approved Budget (subject to the Permitted Deviations) for the Budget period therein whereupon the Debtors' right to use Cash Collateral shall terminate (unless the Debtors obtain an order from the Court authorizing the continued use of Cash Collateral on a nonconsensual basis) unless the parties agree on an Approved Budget in advance of the expiry of such period.

(c)        Notwithstanding anything in this paragraph or elsewhere in this Final Order to the contrary, no Prepetition Collateral (or proceeds thereof), including any Cash Collateral, or the Carve-Out shall be used for professional fees and expenses incurred (i) for any litigation or claims against the RBL Agent or any of the other Prepetition Secured Parties, (ii) in connection with a chapter 11 plan that does not provide for termination of the commitments under the RBL Credit Agreement and the indefeasible payment in full in cash of all obligations under the RBL Credit Documents on or before the effective date of such plan or as otherwise agreed by the RBL Agent and the Prepetition Secured Parties (it being understood that the use of Prepetition Collateral (or proceeds thereof), including any Cash Collateral, used for professional fees and expenses incurred in connection with the chapter 11 plan exhibited to the Restructuring Support Agreement or an amendment thereto shall be permitted unless and until the Debtors actively prosecute the "cram down" treatment for the Prepetition Secured Parties pursuant to section 1129(b)(2)(A) of the Bankruptcy Code pursuant to such plan) or (iii) for the purpose of investigating or challenging the validity, extent, or priority of any claim, lien, or security interest

held or asserted by the RBL Agent or the other Prepetition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Prepetition Secured Indebtedness or the security interests in or liens held by the RBL Agent and the Prepetition Secured Parties on the Prepetition Collateral or the Adequate Protection Collateral (including, for the avoidance of doubt, in respect of the UMB Deposit Account and UMB Cash); *provided*, that the Debtors may reimburse the fees of the Committee, if any, or, if no Committee exists, the Ad Hoc Group, up to an aggregate of $137,500 to investigate (i) the claims and liens of the Prepetition Secured Parties and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties; *provided, further* that nothing in this Final Order shall be deemed to permit or restrict the use of UMB Cash to pay Allowed Professional Fees of the Debtors related to the UMB Reservation of Rights.

3.     **Adequate Protection for the Prepetition Secured Parties**. In addition to all the existing security interests and Prepetition Liens granted to or for the benefit of the Prepetition Secured Parties in and with respect to the Prepetition Collateral, including the Cash Collateral, as adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined herein), and as an inducement to the Prepetition Secured Parties to permit the Debtors' use of the Cash Collateral and other Prepetition Collateral as provided for in this Final Order, the Debtors hereby grant the following:

(a)     **Adequate Protection Liens**. Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, deeds of trust, or other similar documents, or by possession or control, to the RBL Agent, for the benefit of the Prepetition Secured Parties (all property identified in

11

clauses (i) and (ii) of this paragraph 3(a) being collectively referred to as the "Adequate Protection Collateral" and all liens and security interests granted pursuant to this paragraph 3(a), the "Adequate Protection Liens"):

> (i)      *Liens Senior to Other Liens*. Without prejudice to the parties' rights in connection with the UMB Reservation of Rights in connection with the UMB Cash, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien on the Debtors' now-owned and hereafter-acquired real and personal property, assets, and rights of any kind or nature, wherever located, including, without limitation, the Prepetition Collateral and the proceeds, products, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, all inventory, all oil, gas, and other hydrocarbons, and all products and substances derived therefrom (including all raw materials and work in process therefore, finished goods thereof, and materials used or consumed in the manufacture or production thereof), all goods, all accounts, cash, payment intangibles, deposit accounts, accounts receivable, other rights to payment, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, all interest rate hedging agreements, commodity hedging agreements and similar agreements, owned real estate, real property leaseholds, oil and gas leases, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (other than Avoidance Actions, but, including the proceeds thereof), and all proceeds of the foregoing, senior to any other security interests or liens, subject only to valid,

perfected, and enforceable liens (if any) which were senior to the Prepetition Secured Parties' Prepetition Liens or security interests as of the Petition Date (collectively, any such liens, the "Prior Senior Liens").

(ii)     *Liens Junior to Prior Senior Liens.* A valid, binding, continuing, enforceable, fully-perfected lien on and security interest in all prepetition and postpetition property of the Debtors whether now existing or hereafter acquired, that is, as to priority, subject to valid, perfected and unavoidable liens permitted under the RBL Credit Agreement to the extent such permitted liens are senior or pari passu with the Prepetition Liens and were in existence immediately prior to the Petition Date, or to any valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, other than Prepetition Liens, which are immediately junior only to such valid, perfected and unavoidable permitted liens.

(iii)     Notwithstanding anything to the contrary herein, the Prepetition Secured Parties shall not (i) have any rights under section 363(c) of the Bankruptcy Code with respect to the UMB Cash solely by virtue of the Adequate Protection Liens (it being understood that whether or not the Prepetition Secured Parties have any rights under section 363(c) of the Bankruptcy Code with respect to the UMB Cash is subject to the UMB Reservation of Rights) or (ii) seek to enforce the Adequate Protection Liens against the UMB Cash or have any Adequate Protection Claims paid from the UMB Cash, except to the extent that all other Adequate Protection Collateral is insufficient to satisfy the Adequate Protection Claims.

RLF1 16788682v.1

(iv)    The RBL Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, deeds of trust, notices of lien, or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Adequate Protection Liens granted to it hereunder. Whether or not the RBL Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the Adequate Protection Liens, such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination effective as of the Petition Date. A certified copy of this Final Order may, in the discretion of the RBL Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording. The Debtors shall execute and deliver to the RBL Agent all such agreements, financing statements, instruments, and other documents as the RBL Agent may reasonably request to evidence, confirm, validate, or perfect the Adequate Protection Liens.  All such documents shall be deemed to have been recorded and filed as of the Petition Date.

(b)         **Adequate Protection Claims**. Effective as of the Petition Date, an allowed superpriority administrative expense claim arising pursuant to section 507(b) of the Bankruptcy Code against each of the Debtors on a joint and several basis with priority over all

14

other administrative claims in the Cases of the Debtors, including all claims of the kind specified under sections 503(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which administrative claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors, including any proceeds or property recovered in respect of any Avoidance Actions, subject and subordinate only to the Carve-Out. For avoidance of doubt, the Adequate Protection Claims shall include amounts due to the Prepetition Secured Parties under Section 10.04 of the RBL Credit Agreement incurred in connection with the Cases of the Debtors.

(c)         **Adequate Protection Payments**. The Debtors are authorized and directed to pay to the RBL Agent for the ratable benefit of the Prepetition Secured Parties adequate protection payments on the last business day of each calendar month, in each case in an amount equal to all accrued and unpaid prepetition or postpetition interest, fees, and costs due and payable under the RBL Credit Agreement (including, without limitation, interest on loans, breakage costs, and accrued fees owing to the RBL Agent), and, in each case, such payments shall be calculated based on a per annum interest rate equal to the sum of (i) the Alternate Base Rate in effect from time to time, plus (ii) the Applicable Margin for Base Rate Advances[4] in effect during an Event of Default or a Borrowing Base Deficiency; *provided*, that all adequate protection payments made pursuant to this paragraph shall be made from the Prepetition Collateral or proceeds thereof. For the avoidance of doubt, the payment of interest pursuant to this paragraph shall be without prejudice to the rights of the RBL Agent and the Prepetition Secured Parties to assert claims for payment of additional interest at any other rates in accordance with the RBL Credit Agreement; *provided*, that if and only if the Court determines

---

[4] It being understood that the Required Lenders have elected to charge a default rate of interest as provided in such definition of Applicable Margin.

that the Prepetition Secured Parties were undersecured as of the Petition Date under section 506(b) of the Bankruptcy Code, then the Committee, if any, the Debtors, or any other party in interest, may assert that any payments made in respect of this paragraph 3(c) or paragraph 3(e) of this Final Order constitute and may be recharacterized as principal repayments on account of the Prepetition Secured Indebtedness or as part of the Prepetition Secured Parties' secured claim. All defenses to any effort to recharacterize such payments are expressly reserved.

(d) **Other Covenants**. The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's final order granting the *Motion of Debtors for Entry of Interim and Final Orders Authorizing (i) the Debtors to Continue to Maintain Existing Cash Management System, Fuel Card Program, Bank Accounts and Business Forms and (ii) Financial Institutions to Honor and Process Related Checks and Transfers* (the "Cash Management Order"), which Cash Management Order shall not be amended or modified without the consent of the RBL Agent. The Debtors shall not use, sell, or lease any Oil and Gas Properties outside the ordinary course of business, or seek authority of this Court to do the same, without prior consultation with the RBL Agent at least three business days prior to the date on which the Debtors seek the authority of this Court for such use, sale, or lease. For the avoidance of doubt nothing herein shall limit the Debtors' right to use, sell, or lease assets in the ordinary course of business. The Debtors shall comply with the covenants contained in Sections 5.02 and 5.07 of the RBL Credit Agreement regarding the insurance and maintenance of the Prepetition Collateral and the Adequate Protection Collateral.

(e) **Fees and Expenses**. As additional adequate protection, the Debtors shall pay in cash: (i) immediately upon entry of this Final Order, the reasonable and documented professional fees, expenses, and disbursements (including, but not limited to, the

16

fees, expenses, and disbursements of Bracewell LLP, Opportune LLP, and Buchanan Ingersoll & Rooney PC) incurred by the RBL Agent and the Prepetition Secured Parties under the RBL Credit Agreement arising prior to the Petition Date; (ii) the reasonable and documented professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of Bracewell LLP, Opportune LLP and Buchanan Ingersoll & Rooney PC) incurred by the RBL Agent and the Prepetition Secured Parties under the RBL Credit Agreement arising subsequent to the Petition Date; (iii) the reasonable and documented legal fees, expenses, and disbursements of the RBL Agent and the RBL Lenders incurred after the Petition Date in connection with any investigation pursuant to paragraph 17 of this Final Order, any request for standing to pursue claims against such Prepetition Secured Parties, and any Challenge; and (iv) until the occurrence of any Termination Event, payment of the reasonable and documented professional fees, expenses and disbursements payable pursuant to the Restructuring Support Agreement of Kirkland & Ellis LLP, Pachulski Stang Ziehl & Jones LLP and Evercore Group L.L.C. as counsel, co-counsel and financial advisor, respectively, to the Supporting Noteholders subject to the Budget and paragraph 2(c) of this Final Order; *provided*, that following a Termination Event, such fees, expenses and disbursements payable pursuant to the Restructuring Support Agreement shall only be payable, if at all, from any unencumbered cash of the Debtors. The payment of the fees, expenses and disbursements set forth in this paragraph 3(e) of this Final Order shall be made within 10 days after the receipt by the Debtors, the RBL Agent, any Committee, the Ad Hoc Committee, and the United States Trustee (the "Review Period") of summary invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; *provided, however*, that the Debtors,

RBL Agent, any Committee, the Ad Hoc Committee, and the United States Trustee shall have the right to dispute the reasonableness of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") by delivering to counsel for the Supporting Noteholders or the RBL Agent or its counsel, as applicable, a written notice of objection to the Disputed Invoiced Fees within the Review Period, in which case the Debtors shall pay the Invoiced Fees other than the Disputed Invoiced Fees. If such objection is not resolved consensually between the RBL Agent or the Supporting Noteholders, as applicable, and the objecting party, the objecting party may file with the Court a motion or other pleading, on at least 10 days' prior written notice to the RBL Agent or counsel to the Supporting Noteholders, as applicable, of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

(f) **Reporting**. As additional adequate protection to the Prepetition Secured Parties, the Debtors shall comply with the reporting requirements set forth in Section 5.06 of the RBL Credit Agreement and shall provide the following additional reporting to the RBL Agent and counsel to the Supporting Noteholders:

(i) To the extent requested by the RBL Agent, twice per month (or less frequently as may be agreed to between the Debtors and the RBL Agent) calls with the RBL Agent and its advisors, during regular business hours and with reasonable advance notice, on topics related to the Debtors' operations, cash position, the RBL Agent's rights under this Final Order and the Debtors' Cases;

(ii) A copy of each update to the Debtors' business plan as soon as reasonably practicable after it becomes available, together with a reconciliation to the prior business plan;

(iii) [reserved];

(iv)     Promptly, but in any event by the 25th day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail reasonably acceptable to the RBL Agent and the Required Supporting Noteholders, of (A) an accounts payable aging and an accounts receivable aging and (B) all written demands or claims related to or asserting any liens in respect of property or assets of the Debtors (including liens imposed by law, such as landlord's, vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens, and other similar liens) if the amount demanded or claimed exceeds $1,500,000 in the aggregate;

(v)     On or before each Thursday of each calendar week, (A) a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior week, on a line by line basis, showing any variance to the proposed corresponding line item of the Budget, which report and reconciliation shall be in form and substance reasonably satisfactory to the RBL Agent and (B) a statement setting forth in reasonable detail the cash balance for each deposit account of the Debtors as of the previous Friday;

(vi)     Promptly, and in any event by the 25th day of each month or by the 30th day after each fiscal quarter end, beginning with the year-to-date period ended January 31, 2017, a consolidated monthly and year-to-date income statement, balance sheet, and monthly and year-to-date detail of capital expenditures and workovers, which, in each case, may be unaudited and presented without footnotes;

(vii)   A copy of any written notice of the occurrence of any of the enumerated Lender Termination Events or Debtors' Termination Events, in each case within 24 hours of the delivery of such written notice as required by the Restructuring Support Agreement;

(viii)   (A) As soon as available but in any event on or before October 1 of each year an Internal Engineering Report, in form and substance acceptable to the RBL Agent and the Required Supporting Noteholders, dated effective as of the immediately preceding July 1st; (B) as soon as available but in any event on or before April 1 of each year an Independent Engineering Report, in form and substance acceptable to the RBL Agent and the Required Supporting Noteholders, dated effective as of the immediately preceding January 1st; and (C) such other information as may be reasonably requested by the RBL Agent or any Prepetition Secured Party with respect to the Oil and Gas Properties included or to be included in the Borrowing Base under the RBL Credit Agreement; and

(ix)   Such other reports and information as may reasonably be requested by the RBL Agent or as provided to the Supporting Noteholders.

(g)       **Pleadings and Communications with the Court.** The Debtors shall use commercially reasonable efforts to provide two business days' prior notice and drafts of (i) any pleadings filed in the Cases, relating directly to the RBL Credit Agreement, the RBL Credit Documents, this Final Order, the Restructuring Support Agreement, motions to buy or sell assets under section 363 of the Bankruptcy Code (including bidding procedures related thereto), any chapter 11 plan or disclosure statement relating thereto, and any other pleadings material to the Prepetition Secured Parties' rights and (ii) any written communications with the Court or the

office of the United States Trustee relating directly to the RBL Credit Agreement and RBL Credit Documents, or this Final Order.

4.    **Collateral Diminution**. For purposes of this Final Order, "Collateral Diminution" shall mean an amount equal to any diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date through the Termination Date resulting from the following: (a) the sale, use or lease by the Debtors of the Prepetition Collateral, including the Cash Collateral (whether in accordance with the terms and conditions of this Final Order or otherwise); (b) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; or (c) any other decline in value that constitutes diminution in value under applicable law.

5.    [Reserved].

6.    **Priority of Adequate Protection Liens and Adequate Protection Claims**. Subject to the Carve-Out, the Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to paragraph 3 of this Final Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest, or administrative claim under section 364 of the Bankruptcy Code or otherwise.

7.    **Inspection Rights**. In addition to, and without limiting, whatever rights to access the RBL Agent and the Prepetition Secured Parties have under the RBL Credit Documents, upon reasonable prior written notice (including via email) and during normal business hours, the Debtors shall permit representatives, agents, and employees of the RBL Agent and the Supporting Noteholders to (a) have reasonable access to and inspect and copy the

Debtors' books and records, including all records and files of the Debtors pertaining to the Prepetition Collateral and Adequate Protection Collateral, (b) have reasonable access to and inspect the Debtors' properties and (c) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

8.     **Termination**. Subject to the Waiting Period (as defined below), except in the case of 8(g), (h), (k), (l) and (m) below where no Waiting Period shall apply, the Debtors' right to use Cash Collateral pursuant to this Final Order shall automatically terminate (the date of any such termination, the "Termination Date") without further court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (o) below (each such event a "Termination Event," and, collectively, the "Termination Events").

(a)     120 days after the Petition Date (or such later date as may be agreed to by the RBL Agent);

(b)     Termination of the Restructuring Support Agreement in accordance with its terms by the Supporting Noteholders or the Debtors;

(c)     The entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the RBL Agent or the Prepetition Secured Parties with respect to the Prepetition Collateral or the Adequate Protection Collateral with a value in excess of $2,000,000, without the written consent of the RBL Agent, which consent may be withheld in its sole discretion;

(d)     The Case of any of the Debtors is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in the Case of any of the Debtors, or the Debtors seek entry of an order accomplishing any of the foregoing;

(e)            The failure by the Debtors to observe or perform any of the material terms or material provisions contained herein;

(f)            The Debtors create, incur, or suffer to exist any postpetition liens or security interests having a value greater than $2,500,000 in the aggregate on the Prepetition Collateral or Adequate Protection Collateral, other than: (i) those granted pursuant to this Final Order and (ii) Permitted Liens under the RBL Credit Agreement (other than Liens permitted by clauses (q) and (r) of Section 6.01 of the RBL Credit Agreement);

(g)            (i) Except as otherwise provided in this Final Order, an order is entered granting another claim or lien *pari passu* with or senior to the Adequate Protection Liens or Adequate Protection Claims granted to the RBL Agent and the Prepetition Secured Parties under this Final Order; (ii) an order of the Court is entered reversing, staying for a period in excess of five business days, vacating, or otherwise amending, supplementing, or modifying this Final Order in a manner adverse to the Prepetition Secured Parties, in each case without the written consent of the RBL Agent; or (iii) the Debtors file a motion seeking to reverse, stay, vacate, or otherwise amend, supplement, or modify this Final Order, in each case without the written consent of the RBL Agent;

(h)            (i) Any proceeding is commenced or supported by any Debtor seeking, or otherwise consenting to, (A) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Claims or (B) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or Adequate Protection Collateral, including the Cash Collateral, or (ii) any Debtor files a motion, pleading, or proceeding which could reasonably be

23

expected to result in a material impairment of the rights or interests of the Prepetition Secured Parties, subject in each case to the UMB Reservation of Rights;

(i)        The failure by the Debtors to adhere to the Budget, subject to Permitted Deviations;

(j)        The failure by the Debtors to make any payment required pursuant to this Final Order when due;

(k)        The effective date of any confirmed chapter 11 plan for the Debtors;

(l)        The entry of a subsequent order of the Court terminating the Debtors' use of Cash Collateral;

(m)        The Debtors actively prosecute "cram down" treatment for the Prepetition Secured Parties pursuant to section 1129(b)(2)(A) of the Bankruptcy Code;

(n)        Any motion or pleading is filed by the Debtors seeking a sale of substantially all or a material portion of the Debtors' assets without the prior written consent of the RBL Agent; and

(o)        Absent the prior written consent of the RBL Agent, any change or alteration that is adverse in any material respect to the Prepetition Secured Parties to (i) the Debtors' cash management system, as such system existed on the Petition Date (other than changes in the ordinary course of business consistent with past practice) or (ii) the Cash Management Order.

9.        **Remedies After a Termination Date**. Subject to the provisions of paragraph 8 above for Termination Events where no Waiting Period applies, the Debtors' authority to use Cash Collateral, Prepetition Collateral and the Adequate Protection Collateral

shall automatically terminate upon five business days' prior written notice (the "Waiting Period") to the Debtors (with a copy to counsel to the Debtors), counsel to any Committee, counsel to the Supporting Noteholders, and the United States Trustee of the occurrence or during the continuance of a Termination Event, unless such Termination Event is waived in writing by the RBL Agent in its sole discretion, all without further order or relief from the Court. The automatic stay under Bankruptcy Code section 362 is hereby vacated and modified to the extent necessary to permit the RBL Agent to deliver such notice and the RBL Agent and the Prepetition Secured Parties to exercise all rights and remedies against the Prepetition Collateral and Adequate Protection Collateral, including the Cash Collateral, provided for in this Final Order, the RBL Credit Documents, and applicable law, unless the Court has determined that a Termination Event has not occurred or is not continuing or the Debtors obtain an order from the Court within 7 days of the Termination Event authorizing the continued use of the Prepetition Collateral and Adequate Protection Collateral, including Cash Collateral.  During the Waiting Period, except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to contest in good faith whether a Termination Event has occurred or is continuing. Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief.  For the avoidance of doubt, nothing in this Final Order shall be deemed to permit or prohibit the Debtors' use of the UMB Cash if a Termination Event occurs and all parties' rights are reserved with respect thereto.

10.    **Carve-Out**

(a)        For purposes hereof, the "Carve-Out" means an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) fees and expenses of up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); and (iii) allowed and unpaid claims against the Debtors' estates for unpaid fees, costs, and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors or the Committee, if any, whose retention is approved by a final order of the Court (which order has not been reversed, vacated, stayed or appealed) pursuant to sections 327 and 1103 of the Bankruptcy Code, that are incurred (A) before the Termination Date (as defined below) and (B) after the occurrence of the Termination Date and delivery of written notice (the "Carve-Out Trigger Notice") thereof (which may be by email) to the Debtors, the Debtors' counsel, the U.S. Trustee, counsel for the Supporting Noteholders and lead counsel for the Committee, if any, in an aggregate amount not to exceed $3,750,000 (the amount set forth in this clause (iii)(B) being the "Post-EoD Carve-Out Amount"); *provided* that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii) above on any grounds and *provided, further*, that the Carve-Out shall be paid first from any unencumbered cash of the Debtors.

(b)        Notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims granted under this Final Order, including the Adequate Protection Liens, the Adequate Protection Claims and any and all other liens or claims securing the Prepetition Secured Indebtedness.

RLF1 16788682v.1

11.    **Limitation on Charging Expenses Against Prepetition Collateral**. On the passing of the Supporting Noteholder Challenge Deadline (as defined in paragraph 17 below), except to the extent of the Carve-Out, all rights to surcharge the interests of the RBL Agent and the Prepetition Secured Parties in any Prepetition Collateral or Adequate Protection Collateral, under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases. No action, inaction, or acquiescence by the RBL Agent or the Prepetition Secured Parties, including permitting the use of Cash Collateral to fund the Debtors' ongoing operations, shall be construed as consent to a charge against the Prepetition Collateral or Adequate Protection Collateral pursuant to Bankruptcy Code sections 105(a) or 506(c).

12.    **No Marshaling**. The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral.

13.    **Reservation of Rights of the Prepetition Lenders**. This Final Order and the transactions contemplated hereby shall be without prejudice to (a) the rights of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or take any other action in the Cases, and to appear and be heard in any matter raised in the Cases, and (b) any and all rights, remedies, claims, and causes of action which the Prepetition Secured Parties may have against any Debtor or non-Debtor party liable for the Prepetition Secured Indebtedness. For all adequate protection purposes throughout the Cases of the RBL Credit Parties, the Prepetition Secured Parties shall be deemed to have requested relief

RLF1 16788682v.1

from the automatic stay and adequate protection as of the Petition Date; *provided, however*, that nothing in this sentence shall be deemed to affect the time periods set forth in section 362(e)(1) of the Bankruptcy Code in the event that the Prepetition Secured Parties seek to lift the automatic stay prior to the Termination Date.

14.     **Survival of Final Order**. The provisions of this Final Order, including all findings herein, shall be binding upon and inure to the benefit of all parties in interest in the Cases, including the Prepetition Secured Parties, the Debtors, the Supporting Noteholders, the Committee, if any, and their respective successors and assigns including, without limitation, any chapter 11 trustee appointed during the Cases or upon a conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to chapter 7 cases, dismissing the Cases under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization. The terms and provisions of this Final Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Final Order, shall continue notwithstanding any conversion of the Cases to chapter 7 cases under the Bankruptcy Code, dismissal of the Cases or confirmation or consummation of any plan(s) of reorganization, other than a plan that provides for the indefeasible payment in full in cash of the obligations under the Loan Documents or provides for the amendment and restatement of the Loan Documents on terms acceptable to the RBL Agent and the RBL Lenders. Subject to the reservation of rights set forth in paragraph 3(c) of this Final Order and the limitations described in paragraph 17 of this Final Order, the adequate protection payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense, or

28

avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

15. **Reversal, Stay, Modification, or Vacatur**. In the event the provisions of this Final Order are reversed, stayed, modified, or vacated by court order following notice and any further hearing, such reversals, modifications, stays, or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this Final Order. Notwithstanding any such reversal, stay, modification, or vacatur by court order, any indebtedness, obligation, or liability incurred by the Debtors pursuant to this Final Order arising prior to the RBL Agent's receipt of notice of the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Final Order, and the RBL Agent and the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges, and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation, or liability, and the validity of any payments made or obligations owed or lien or security interest granted pursuant to this Final Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

16. **No Liability to Third Parties**. With respect to any approval or disapproval of expenditures set forth in the Budget, the RBL Agent and the other Prepetition Secured Parties shall not: (a) be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

RLF1 16788682v.1

17.    **Reservation of Certain Third Party Rights and Bar of Challenge and Claims**. The Debtors' admissions and releases contained in paragraphs A, B, C, and E of this Final Order: (a) shall be binding upon the Debtors for all purposes; and (b) shall be binding upon all other parties in interest, including the Committee, for all purposes unless (i) a party has properly filed an adversary proceeding or contested matter challenging the amount, validity, enforceability, priority, or extent of the Prepetition Secured Indebtedness or the Prepetition Liens, or otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates (a "Challenge"), on or before, (A) for all parties in interest, including any Committee, other than the Supporting Noteholders, the 75th calendar day after the Petition Date (the "General Challenge Deadline") or (B) in the case of the Supporting Noteholders, the earlier of (1) 75 days after the date of entry of the Interim Order and (2) the date that is 10 days after the filing by the Debtors of a pleading actively prosecuting the "cram down" treatment for the Prepetition Secured Parties pursuant to section 1129(b)(2)(A) of the Bankruptcy Code (the "Supporting Noteholder Challenge Deadline" and, together with the General Challenge Deadline, the "Challenge Deadlines") (*provided,* that in the event that the Court enters an order confirming the *Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 3] prior to the expiration of the Challenge Deadlines, the Challenge Deadlines shall be shortened to such date); and (ii) the plaintiff authorized to bring a Challenge obtains relief in any such timely and properly filed Challenge. If no such Challenge is properly filed or the plaintiff's claims are dismissed or denied by court order, then: (w) the Debtors' admissions and releases contained in paragraphs A, B, C, and E of this Final Order shall be binding on all parties in interest, including the Supporting Noteholders and any Committee; (x) the obligations of the Debtors under the RBL Credit Documents shall constitute

allowed claims for all purposes in the Cases of the Debtors and any subsequent chapter 7 case(s) without the necessity of the RBL Agent or the Prepetition Secured Parties filing any proofs of claim in the Cases of the Debtors; (y) subject to Prior Senior Liens, the Prepetition Secured Parties' security interests in and Prepetition Liens upon the Prepetition Collateral and the Adequate Protection Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first-priority security interests and liens, not subject to recharacterization, subordination, or otherwise avoidable; and (z) the Prepetition Secured Indebtedness and the Prepetition Liens on the Prepetition Collateral and Adequate Protection Collateral shall not be subject to any other or further challenge by the Supporting Noteholders, any Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such Challenge is properly filed as of the dates set forth herein, the Debtors' admissions and releases contained in paragraphs A, B, C, and E of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such Challenge. Nothing contained in this Final Order shall be deemed to grant standing to the Supporting Noteholders, the Committee or any other party to commence any such Challenge.

18.    **Enforceability; Waiver of Any Applicable Stay**. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order. To the

RLF1 16788682v.1

extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

19.   **Proofs of Claim**. Neither the RBL Agent nor any of the other Prepetition Secured Parties will be required to file proofs of claim in any of the Cases of the Debtors or successor cases with respect to the Prepetition Secured Indebtedness or the Adequate Protection Claims, and the Debtors' stipulations in paragraph A herein shall be deemed to constitute a timely filed proof of claim against each Debtor. Notwithstanding the foregoing, the RBL Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable RBL Credit Documents; *provided*, *however*, that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

20.   **Section 552(b) of the Bankruptcy Code**. The RBL Agent and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, upon the passing of the Supporting Noteholder Challenge Deadline, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the RBL Agent and the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral. For the avoidance of doubt, claims of the Prepetition Secured Parties under section 507(b) of the Bankruptcy Code may be paid from any cash returned or surcharged pursuant to section 506(c) or 552(b) of the Bankruptcy Code.

21.   **Federal Leases**. Notwithstanding anything to the contrary in the Motion or this Order, to the extent the provisions of this Order approve the granting of a lien on any

interest of the Debtors in any federal lease, right-of-way, right-of-use or easement, or constitute a finding that a pre-petition lien on any interest of the Debtors in any federal lease, right-of-way, right-of-use or easement is valid and enforceable, the provisions of this Order are without prejudice to the United States Department of the Interior's ability to challenge the extent or validity of such pre-petition or post-petition lien(s).

22.    **Compliance and Regulatory Obligations**. Notwithstanding any other provisions of this Order or the Motion, nothing in this Order, the Motion, or the annexed cash collateral budget is intended to relieve the Debtors of any obligations under federal, state or local police or regulatory laws; impact the Debtor's obligations under or permit the Debtor to violate 28 U.S.C §959(b); or limit, or affect, in any way the rights of the United States Department of the Interior with respect to the Debtor's regulatory obligations.

23.    **United States' Rights of Setoff and Recoupment**. Notwithstanding anything to the contrary in the Motion or this Order, subject to Section 553 of the Bankruptcy Code and applicable law, nothing in this Order is intended to limit, impact or affect in any way any valid rights to setoff or recoupment that the United States Department of the Interior may have, all of which are expressly preserved.

24.    **Payments Free and Clear**. Any and all payments or proceeds remitted to the RBL Agent and the Prepetition Secured Parties pursuant to the RBL Credit Documents or pursuant to the provisions of this Final Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability.

25.    **Headings**. The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

RLF1 16788682v.1

26.    **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Final Order.

27.    **Bankruptcy Rule 6003.** The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

28.    **Necessary Action**. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

29.    **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

30.    **Controlling Effect of Final Order**.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion, or the Cash Management Order, the provisions of this Final Order shall control to the extent of such conflict.

31.    **Service**. The Debtors shall promptly serve copies of this Final Order on the parties having been given notice of the Final Hearing, to any party that has filed a request for notices with this Court and to the Committee, if any, or such Committee's counsel, if the same shall have been appointed.  No later than three days after such service, the Debtors shall file a certificate of service with the Court.

Dated: _____, 2017
       Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE